JANET M. PETERS, Petitioner-Appellant, *v.* BOARD OF EDUCATION OF
RANTOUL TOWNSHIP HIGH SCHOOL DISTRICT NO. 193 OF
CHAMPAIGN COUNTY, Respondent-Appellee.

Fourth District    No. 17431

Opinion filed May 5, 1982.

Drach, Terrell & Deffenbaugh, P. C., of Springfield, for appellant.

Robert A. Mathis, of Rantoul, for appellee.

JUSTICE LONDRIGAN delivered the opinion of the court:

In this appeal, we are called upon once again to interpret the tenure
provisions of section 24—12 of the School Code (Ill. Rev. Stat. 1979, ch.
122, par. 24—12) as they apply to a full-time teacher who was dismissed as
a result of faculty reductions in the respondent school district. The
controversy focuses upon that portion of section 24—12 which requires

the school board to dismiss teachers of lower seniority before dismissing a tenured teacher of higher seniority who is legally qualified to hold a "position" currently held by the teacher of less seniority.

On July 28, 1981, petitioner filed her petition for a writ of *mandamus* seeking reinstatement as a full-time teacher with respondent school district. Following a hearing, the petition was denied on August 18, 1981.

Petitioner, Janet Peters, a tenured teacher in the employment of respondent, began her duties in the 1976-77 school year. From 1976 through the 1980-81 school year she taught five English courses annually and occasionally supervised study halls. During those years, her English teaching assignments were uniformly divided as follows: two English III courses and three English II courses.

At the end of the 1979-80 school year, petitioner was honorably discharged due to a reduction in the number of teaching positions but was rehired for the following school year because of the retirement of another English teacher. Upon reinstatement, class schedules were shifted so that petitioner could be assigned to a case load identical to that which she had maintained in previous years. Throughout these years, other faculty, in varying degrees, also taught additional sections of English II and English III.

On April 1, 1981, petitioner was informed of her honorable discharge effective at the end of the school year because of a resolution adopted by the school district to "discontinue the particular type of teaching service in which [petitioner is] now engaged." Despite that claim by the school board, the course schedule for the 1981-82 school year reflected that one English teaching position remained unstaffed. Subsequent to petitioner's discharge, another teacher with less seniority than petitioner was hired to fill that English position. Petitioner made a demand upon respondent for reinstatement to teach courses in English and European history, both of which she was qualified and authorized to teach under the pertinent State teaching requirements and her certificate valid for high school 6—12 teaching.

Although respondent admitted that petitioner was certified to teach sections of English and European history, the school district refused to reinstate petitioner because there was no "position" in those areas, held by a tenured teacher of less seniority, which petitioner was legally qualified to teach in its *entirety*. The English position, subsequently filled by a teacher with less seniority, included one section of journalism, three sections of English, and required the teacher to manage the school yearbook and newspaper. Respondent argued that since petitioner is not legally qualified to teach journalism, a claim which petitioner does not dispute, she was not qualified to fill that position. Petitioner also sought to teach courses in European history which the evidence showed was

synonymous with course offerings designated as "world history." Respondent argued that petitioner was not entitled to teach those sections of world history because they were included in a "position" consisting of two sections of world history and three sections of U.S. history, the latter of which petitioner is not legally qualified to teach. It is also undisputed that petitioner has never taught world or European history although she is legally qualified by the State Board of Education to do so.

In short, petitioner contends that she is entitled to be assigned the courses which she is legally qualified to teach but which now constitute only a portion of full-time positions as defined by the respondent school board. Respondent, on the other hand, argues that the board has wide discretion in defining the term "position" and that once defined, petitioner is only entitled to reinstatement if she can demonstrate that she is legally qualified to teach all of the courses encompassed within the "position" of the teacher she seeks to replace.

The tenure rights which petitioner seeks to invoke are based on those set forth in the School Code at section 24—12 which states in pertinent part:

> "If a teacher in contractual continued service is removed or dismissed as a result of a decision of the board to decrease the number of teachers employed by the board or to discontinue some particular type of teaching service, * * * in all such cases the board shall first remove or dismiss all teachers who have not entered upon contractual continued service before removing or dismissing any teacher who has entered upon contractual continued service and who is legally qualified to hold a position currently held by a teacher who has not entered upon contractual continued service. As between teachers who have entered upon contractual continued service, the teacher or teachers with the shorter length of continuing service with the district shall be dismissed first * * *."
> Ill. Rev. Stat. 1979, ch. 122, par. 24—12.

The complex aspects of the problem have been succinctly stated in the oft-quoted language from *Hagopian v. Board of Education* (1978), 56 Ill. App. 3d 940, 372 N.E.2d 990:

> "The statutory term 'position' becomes complicated because of the practice of self-contained classrooms for some grades, and departmentalization to some extent in the middle grades, and subject matter segregation for majors and minors in high school. School districts may exercise wide latitude and autonomy in determining which grades will be clustered and which subjects will be grouped under one teacher and which departmentalized. The courts cannot allow school boards, whether in good or bad faith, to rearrange teaching assignments (positions) in ways which defeat

the rights of tenured teachers and circumvent the purpose and spirit of the tenure laws." (56 Ill. App. 3d 940, 944, 372 N.E.2d 990, 994.)

Since, in this case, two distinct issues are involved in determining whether petitioner is entitled to reinstatement and assignment to history or English courses, we must necessarily treat each aspect separately.

■■ In order for petitioner to teach the world history courses, she would have to "bump" a teacher already assigned to those courses. As we have previously noted, to allow this would be to invite a chain reaction with senior teachers in turn preempting positions of the teaching assignments of those with less seniority. (*Hayes v. Board of Education* (1981), 103 Ill. App. 3d 498, 431 N.E.2d 690.) In this regard, we cannot accept petitioner's contention that she has a right to pick and choose a class or two from teaching positions which she is otherwise unqualified to teach so as to "create" a new position at the intended expense of other faculty members. *Higgins v. Board of Education* (1981), 101 Ill. App. 3d 1003, 428 N.E.2d 1126; *Hayes.*

However, the same cannot be said for the board's refusal to reinstate petitioner to teach English. While the respondent has broad discretion to create new teaching positions and to arrange teaching assignments, these realignments cannot stand where the continued employment of a tenured teacher might be jeopardized. The board may not shift teachers so that respondent is no longer legally qualified to teach the position to which she has been assigned. (*Higgins.*) Stated in other terms, the statute prohibits a realignment of teaching assignments to *avoid* the existence of a position which could be filled by a tenured teacher for whom dismissal was sought. *Hayes.*

It is critical to note that this situation differs significantly from that presented by petitioner's claim to the history courses. Implicit in the context in which "bumping" occurs, one or more of the other existing faculty members would either have been dismissed or had their otherwise full-time teaching positions reduced to accommodate the newly "created" positions caused by the vertical realignment of teaching loads. In the instant case, the realignment of courses envisioned by petitioner would not reduce the number of faculty nor affect any existing teaching loads in an adverse manner.

The evidence demonstrates that at least one other English faculty member is competent to teach journalism. That faculty member's teaching position for 1981-82 was comprised exclusively of English courses which petitioner could have taught. The simple transportation of one class in English for one class in journalism would have had the effect of enabling each of the then existing faculty members to maintain a full class load without the necessity of dismissing petitioner. This is precisely the

type of prohibited realignment of course assignments which avoids the existence of a position which petitioner is qualified to teach.

■■ Where, as here, it can be demonstrated that courses in the particular discipline are freely interchangeable between the various faculty members, it is palpably arbitrary and capricious for the school board to assign courses so as to require dismissal of faculty when all existing faculty can be accommodated by internal realignment of teaching assignments which do not jeopardize any existing rights of other faculty members. When the status quo can be maintained, both with regard to personnel and teaching loads, senior faculty members have a right to insist upon the horizontal realignment of course assignments to preserve their full-time teaching status. We conclude that such horizontal realignment does not amount either to the "creation" of a position within the meaning ascribed to it, nor does petitioner's request for realignment constitute "bumping" within the meaning of *Higgins* and *Hayes*. We also reject respondent's contention that petitioner was not qualified to hold the English "position" because she was not qualified to supervise the yearbook and newspaper. The exhibits showed that in prior teaching years, a music teacher supervised these activities. Furthermore, the State Board of Education has not established any standards requiring particular academic credentials in this area. Finally, given the nature of the assignment, we fail to perceive why a qualified English teacher would not have sufficient expertise to supervise a high school yearbook and newspaper.

For the foregoing reasons, the judgment of the Champaign County circuit court is reversed and remanded with directions to issue the writ of *mandamus*.

Reversed and remanded with directions.

MILLS and TRAPP, JJ., concur.