LYNN WILFONG, *Petitioner-Appellant, v.* COLLINSVILLE COMMUNITY UNIT SCHOOL DISTRICT NO. 10 *et al.*, Respondents-Appellees.

Fifth District    No. 81-254

Opinion filed July 14, 1982.

Weihl & Millard, Ltd., of Belleville (Donald E. Weihl, of counsel), for appellant.

Dunham, Boman and Leskera, of East St. Louis (John W. Leskera and Russell K. Scott, of counsel), for appellees Collinsville Community Unit School District No. 10 and Collinsville Board of Education.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

Petitioner, Lynn Wilfong, brought an action in the circuit court of Madison County against respondents, the Collinsville Community Unit School District No. 10, the Collinsville Board of Education, and the Collinsville Education Association, seeking to enjoin respondents from reassigning her and assigning another teacher to the position formerly held by petitioner at a district elementary school. After a bench trial, the court denied petitioner's request for injunctive relief and found in favor of respondents.

At issue is the collective bargaining agreement negotiated by the board and the Collinsville Education Association (hereinafter referred to as C.E.A.), the bargaining agent for certificated personnel employed by the Board, for the 1978-79, 1979-80 school years. The parties reached an agreement during the fall of 1978; however, the agreement was not signed until March 9, 1979, because the language was recodified. The collective bargaining agreement was distributed to all certificated personnel on April 5, 1979.

Specifically in dispute are the following provisions as originally contained in article XI of the collective bargaining agreement:

"Section 4. If an employee's position is eliminated, that person shall be permitted to bump into any position for which he/she is qualified provided that such teacher:

a. is certificated for the position he/she is bumping into, and

b. has more district seniority than the teacher he/she is bumping.

\* \* \*

Section 5. The teacher with the most seniority may choose from those teachers who will be laid off because of the bumping process, assuming that teachers who bump are qualified. Teachers may not, however, bump someone who is not scheduled to be reduced."

On April 9, 1979, the board and the C.E.A. sent a memorandum to all certificated personnel which stated that section 5 of article XI was placed into the contract inadvertently and was not intended to be a part of the agreement.

The evidence at trial shows that the board and the C.E.A. agreed that the purpose of the bumping procedure was to facilitate teacher transfers following the board's decision to eliminate positions by giving preferential rights to teachers with district seniority. According to the parties'

understanding, the board would be in breach of the agreement if it reassigned teachers whose positions were eliminated without allowing them to choose their assignments through the bumping procedure.

Petitioner is employed by respondent board in continued contractual service, as tenure is referred to in the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 24—11), and is a member of the C.E.A. From 1976 through 1979, she taught kindergarten at Lincoln Elementary School. On March 29, 1979, the school principal informed petitioner that she was being bumped from her position by Ann Rauh. Petitioner was further informed that she had the right to choose her reassignment through the bumping procedure.

Following this notification, petitioner and her husband talked several times with Assistant Superintendent Dallas T. Harrell to protest her reassignment. Upon receiving a copy of the contract on April 5, petitioner's husband complained to Harrell that the reassignment was in violation of section 5 of article XI. Harrell replied that the specific provision did not apply to petitioner's situation. Petitioner then filed a grievance through the C.E.A. which it refused to process. Thereafter, petitioner chose as her reassignment a kindergarten position at Maryville East School and Summit School, the position she held at the time of trial. It is undisputed that petitioner suffered no reduction in salary or loss of other benefits as a result of the transfer, although she must travel an additional 10 miles to work.

Ann Rauh was teaching art at North Junior High School and at the adjoining Lincoln Elementary School. She holds both an elementary certificate and an art certificate. In March 1979, after being informed that her teaching positions were being eliminated, Rauh chose the position held by petitioner at Lincoln Elementary School. It is undisputed that Rauh was both qualified to teach the kindergarten class and had more district seniority than petitioner. Rauh was the least senior teacher at North Junior High School, but she was not the least senior teacher at Lincoln Elementary School.

The board had instructed the administration that positions should be reduced because of financial exigencies. The administration reported periodically to the board to discuss which positions could be eliminated most feasibly. The specific decision to eliminate the positions held by Rauh was based on the anticipated decreased enrollment for the upcoming school term. The remaining teachers assumed Rauh's teaching responsibilities. No evidence was presented that any teacher was dismissed as a result of the administration's decision to eliminate Rauh's positions.

After hearing evidence, the trial court found that the agreement governing petitioner's rights did not include section 5 of article XI; that Rauh's position was eliminated as that term was used in the agreement; and that

the procedure by which petitioner was transferred was not arbitrary or discriminatory.

The basic issue involved in this appeal is whether petitioner proved that she was entitled to enjoin respondents from reassigning her and assigning another teacher to the position formerly held by petitioner at a district elementary school. On appeal, petitioner argues, in substance, that the trial court erred in its interpretation of the contract between the teacher's union and the school board and that the reassignment was in violation of her rights as established by that contract.

■■ ■ An injunction is an extraordinary remedy which is granted only after the petitioner establishes the existence of a lawful right, irreparable harm and inadequate remedy at law. (*Distaola v. Department of Registration & Education* (1979), 72 Ill. App. 3d 977, 391 N.E.2d 489.) The decision to grant or deny injunctive relief is one of judicial discretion and should not be reversed absent a showing of an abuse of discretion. *Thrash v. Board of Education* (1982), 106 Ill. App. 3d 182, 435 N.E.2d 866.

■■ Petitioner argues that article XI, section 2 of the collective bargaining agreement, which provides that the board must reduce the least senior teachers first, means that the school board must reduce staff by eliminating teachers and not by eliminating teaching positions. We cannot accept petitioner's interpretation of the contractual provision. School boards are vested with broad discretion in creating new teaching assignments and in rearranging teaching assignments in all cases except where the continued employment of a tenured teacher may be jeopardized. (*Higgins v. Board of Education* (1981), 101 Ill. App. 3d 1003, 428 N.E.2d 1126; Ill. Rev. Stat. 1979, ch. 122, par. 24—11.) Article XI, section 2 of the contract merely delineates the order of dismissal of teachers according to district seniority. It does not prohibit the board from eliminating particular positions. Indeed, to construe the contractual provision as petitioner urges would deny the flexibility that school boards need in order to efficiently operate our public schools. (See *Lester v. Board of Education* (1967), 87 Ill. App. 2d 269, 230 N.E.2d 893.) Clearly the board had the authority to eliminate Rauh's position.

The question becomes whether the school board properly allowed Rauh to choose as her reassignment the position held by petitioner. In this regard, petitioner argues that because article XI, section 5 of the employment contract prohibited teachers whose positions were eliminated from bumping teachers who were not scheduled to be reduced, Rauh was prohibited under the terms of the contract from bumping petitioner. Petitioner further argues that contrary to the trial court's finding, respondents failed to prove that this provision was not intended to be a part of the contract. However, section 4 and section 5 would seem to be concerned with entirely different situations, the former to elimination of teaching

positions, but not staff, the latter to reduction in teaching force under section 24—12 of the School Code. (Ill. Rev. Stat. 1979, ch. 122, par. 24—12.) Inasmuch as we are here concerned only with the elimination of a teaching position, the presence or absence of section 5 in the collective bargaining agreement is immaterial and of no aid to petitioner. Reduction in teaching force, we would note, would still be governed by the detailed provisions of section 24—12 of the School Code. Furthermore, another section of the same article of the collective bargaining agreement (section 2) governed the manner in which teachers would be discharged if teaching personnel were to be reduced. This provision was in accord with the procedure of section 24—12 of the School Code; so, contrary to petitioner's argument, we do perceive an ambiguity in the meaning of section 5 of the agreement.

We find *Peters v. Board of Education* (1982), 106 Ill. App. 3d 77, 435 N.E.2d 814, instructive on the issue raised here. In *Peters*, petitioner, a tenured teacher, filed a petition for writ of *mandamus* seeking reinstatement as a full-time teacher with respondent school district. Petitioner was honorably discharged following the school board's decision to eliminate her English classes. Petitioner made a demand on the board for reinstatement to teach English or European history which was denied. The court, in *Peters*, rejected petitioner's contention that she had a right to choose certain history classes from teaching positions that she was otherwise unqualified to teach in order to "create" a new position. The court, however, found in favor of petitioner in regard to her request to hold an English teaching position where the reassignment of one class in journalism would have enabled each of the existing teachers to maintain a full teaching schedule without necessitating petitioner's dismissal. The court reasoned that teachers with district seniority have a right to insist upon the "horizontal realignment of course assignments" to maintain their full-time teaching status where such realignment would not jeopardize the rights of other faculty members.

■■ Similarly, Rauh had a right to insist upon the realignment of course assignments following the board's decision to eliminate her art position. It was undisputed that she was qualified to teach the kindergarten class formerly taught by petitioner. As in *Peters*, the transfer of Rauh and the subsequent reassignment of petitioner did not result in the dismissal of any district teachers. Further, it was undisputed that petitioner did not suffer a reduction in salary or loss of other benefits as a result of the board's actions. Because petitioner failed to demonstrate how she was prejudiced by the board's action, we find it unnecessary to consider whether the trial court properly interpreted the employment contract.

Even were we to accept petitioner's argument that section 5 of the contract applied to her and could not be eliminated from the collective bargaining agreement on the basis that it was inserted into the agreement

by mutual mistake or typographical error on the part of the board and the C.E.A., an issue we do not reach, we do not find that petitioner could be afforded any effective relief. As we have noted, she suffered no loss of salary or seniority rights; she has been inconvenienced by being required to drive additional miles to work, but she asks no relief other than being restored to her former teaching assignment. She acknowledges that the school administration could immediately assign her to teach at the same elementary schools where she has taught for the past two school terms. Her real complaint is that the board and school administration did not make this decision by the exercise of independent judgment. In this regard we would note that the bumping procedure established in section 4, which allows teachers to choose their teaching assignments even though the provisions of section 24—12 of the School Code regarding dismissal of teachers in contractual continuous service have not been brought into play, is arguably violative of the public policy of Illinois in that it delegates to an individual teacher one of the discretionary powers given the board under the School Code.

It is established that while a school board may enter into a collective bargaining agreement with a teacher's union, the board cannot, by such an agreement, delegate or limit its statutory powers and duties. (*Weary v. Board of Education* (1977), 46 Ill. App. 3d 182, 360 N.E.2d 1112.) According to the testimony of a school board representative, the contract provision granting bumping rights to teachers with district seniority meant that the teachers had the right to choose their particular assignments upon the elimination of their positions. If the school board reassigned teachers who had bumping rights without allowing them to exercise these rights, then the board would be in breach of the contract. This provision, therefore, restricts the board's discretionary power to transfer teachers. (*Classroom Teachers Association v. Board of Education* (1973), 15 Ill. App. 3d 224, 304 N.E.2d 516; Ill. Rev. Stat. 1979, ch. 122, par. 24—11.) Here, it was arguably Mrs. Rauh's decision and not the decision of the school board that resulted in petitioner's transfer, a decision that the board believed it was compelled to execute under the terms of the collective bargaining agreement. We believe that there is a distinction between demanding a particular teaching position and insisting on the protection of teacher tenure rights. Because petitioner does not raise this argument on appeal, however, we decline to consider this point in reaching our decision.

For the foregoing reasons, we conclude that the trial court did not abuse its discretion in denying the petition for injunctive relief.

Affirmed.

KASSERMAN and JONES, JJ., concur.