No. 54,862

LEOTA COATS, *Appellee*, v. BOARD OF EDUCATION, UNIFIED SCHOOL DISTRICT NO. 353, SUMNER COUNTY, KANSAS, *Appellant*.

(662 P.2d 1279)

Opinion filed April 29, 1983.

*Fred W. Rausch, Jr.*, of Topeka, argued the cause and was on the brief for the appellant.

*E. L. Lee Kinch*, of Ratner, Mattox, Ratner, Barnes and Kinch, P.A., of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is a teacher nonrenewal case. The school board appeals from the trial court's order awarding the teacher reinstatement and damages.

Leota Coats was employed by U.S.D. No. 353 in 1973 to teach

in the Wellington High School Language Arts department. She had attended Parsons Junior College from 1963-65 and received her bachelor of science degree in education from Kansas State Teachers College at Emporia in 1967. She obtained her Master's degree from the same institution in 1968 at which time she was a teaching assistant. Before coming to Wellington she taught freshman composition, creative writing, English literature and American literature at Cowley County Community College.

Ms. Coats taught a variety of English courses at Wellington High School, including grammar and composition. In 1976 she was named chairperson of the Language Arts Department. There were four teachers in the Wellington High School Language Arts department who taught English courses such as grammar and composition — Ms. Coats, Alice Corley, Louise Leslie and Sherri Lichtenberger. Leslie and Corley had both been at Wellington Senior High since 1972. Lichtenberger came to the high school in 1978.

In addition to those who taught only the English classes, other teachers in the department worked in specialized areas of language arts, including some extracurricular activities. Mary Ellen Garver taught journalism and published the yearbook. Chris Hutchens taught dramatics and produced the school plays. Garland Pugh taught senior high debate and forensics. Judy Snodgrass taught French and Terry Brecheisen taught Spanish. Only Garver, Pugh and Brecheisen had been at Wellington longer than Coats.

Wellington Junior High School also has a language arts department. In addition to their work at the senior high school, Pugh, Hutchens and Snodgrass taught some junior high language arts classes. Other junior high English teachers included Margaret Moore, Ron Keefer, Richard Roberts, Shelly Staten and Donis Whaley. Of this group only Moore and Whaley had been with the Wellington schools longer than Ms. Coats. Keefer, Roberts, and Staten were nontenured teachers.

As in most schools Wellington Senior High School experienced a decline in general enrollment during the time Ms. Coats taught there. Between the 1975-76 and 1979-80 school years enrollment dropped from 542 students to 418 students. Projected enrollment for 1980-81 was 390 students. There was a like decline in enrollment in junior high school. Accordingly, there

was also a decrease in the number of students taking language arts.

As a result of the enrollment slump an administrative decision was made to reduce force in the language arts department. Richard Waln, superintendent of schools for U.S.D. No. 353, testified regarding the method used to determine which teacher or teachers were to be terminated. Based on pre-enrollment figures for the 1980-81 school year it was determined that the Wellington Senior High Language Arts department should be reduced by one full-time and one part-time teacher. (Sherri Lichtenberger, who had only been at Wellington for one year, was the part-time teacher.) The administration then removed from consideration for nonrenewal those teachers who taught in the specialized areas of language arts. That left only the four English teachers to be considered for nonrenewal. Of those four Leota Coats had the least seniority. Junior high English teachers were not considered for nonrenewal because the school board considered the high school teachers unqualified to teach in junior high. Thus, a tenured high school English teacher could not move into a position vacated by a nontenured junior high English teacher.

On March 11, 1980, the school board adopted a resolution indicating its intent to nonrenew Ms. Coats due to a "reduction of the teaching staff in said district because of a decline in enrollment in the high school in the district." A written notice of nonrenewal was timely served on Ms. Coats.

Because Ms. Coats had taught at Wellington High School for two consecutive years she was entitled to the due process protections of the Teacher Tenure Law, K.S.A. 72-5436 et seq. Accordingly, she requested a due process hearing pursuant to K.S.A. 72-5438. A hearing committee was impaneled. The school board chose its attorney, C. E. Russell, as its designee. The hearing was held June 3 and 4, 1980. Subsequently the hearing committee recommended by a two-to-one vote that Ms. Coats' contract be nonrenewed. The school board followed the recommendation and voted to nonrenew Ms. Coats.

Ms. Coats appealed to the district court, which reversed the school board, holding: (1) The appointment of the school board's attorney to the hearing committee violated Ms. Coats' right to due process, and (2) the school board acted fraudulently, arbi-

trarily and capriciously by nonrenewing Ms. Coats when it retained nontenured language arts teachers. The district court also ordered Ms. Coats be reinstated and awarded her damages in the amount of $8,940.44.

The school board has appealed.

Before proceeding with a discussion of the issues, general principles regarding scope of review and due process under the Teacher Tenure Law, K.S.A. 72-5436 *et seq.*, should be noted. This court recently restated the scope of review rules in *Kelly v. Kansas City, Kansas Community College,* 231 Kan. 751, 754-55, 648 P.2d 225 (1982):

"[I]n reviewing a district court's decision the Supreme Court will, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, make the same review of the administrative tribunal's action as does the district court. [Citations omitted.] That said, it should also be noted the district court's scope of review on appeal is very limited. The applicable rule was first stated in *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 450, 436 P.2d 828 (1968):

" 'A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, the tribunal acted fraudulently, arbitrarily or capriciously, whether the administrative order is substantially supported by evidence, and whether the tribunal's action was within the scope of its authority.'

"This three-pronged standard has been repeated frequently."

More specifically, under the Teacher Tenure Law a tenured teacher may be terminated or nonrenewed only if good cause is shown, "including any ground which is put forward by the school board in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the school board's task of building up and maintaining an efficient school system." *Gillett v. U.S.D. No. 276,* 227 Kan. 71, 78, 605 P.2d 105 (1980). See also *Haddock v. U.S.D. No. 462,* 233 Kan. 66, 661 P.2d 368 (1983). Good cause must be supported by substantial evidence. The burden of proof is on the board. K.S.A. 72-5442; *Schmidt v. U.S.D. No. 497,* 231 Kan. 267, 269, 644 P.2d 396 (1982); *Haddock v. U.S.D. No. 462,* 233 Kan. 66.

The nature of Ms. Coats' argument must be clearly understood. She does not contend there was no need for a reduction in the language arts teaching staff. Further, she offers no argument a bona fide reduction in force does not constitute good cause for nonrenewal. Instead, Ms. Coats' dispute is with the method by which the reduction in force took place. She maintains the school board's method was fraudulent, arbitrary and capricious.

Ms. Coats is certified by the State Department of Education to teach composition, grammar and literature in both senior and junior high schools. She is further certified to teach social studies in junior high only. She argues the school board's nonrenewal of a tenured teacher legally certified to teach junior high English while retaining nontenured junior high English teachers was "arbitrary, capricious, irrational, unreasonable and inconsistent with the purposes of the Teacher Tenure Law." Thus, she does not claim good cause for reduction of the teaching staff was lacking; she only argues there was not good cause to nonrenew the teacher chosen by the school board.

The trial court agreed with Ms. Coats, calling the school board's conduct "fraudulent, arbitrary and capricious." The propriety of this holding constitutes the first point on appeal.

This is an issue of first impression in Kansas and cases previously decided by this court offer little help. Two decisions deserve to be mentioned. In *Sells v. U.S.D. No. 429*, 231 Kan. 247, 644 P.2d 379 (1982), this court held the school board's decision to nonrenew a tenured teacher based on the elimination of the special education program in which she taught was supported by good cause. Second, *Million v. Board of Education*, 181 Kan. 230, 234, 310 P.2d 917 (1957), provides a general statement of the purpose behind the Teacher Tenure Law which serves as a good background for discussion of the immediate issue:

"The evident purpose of the Tenure of Instructors Act is to protect competent and worthy instructors and other members of the teaching profession against unjust dismissal of any kind — political, religious or personal, and secure for them teaching conditions which will encourage their growth in the full practice of their profession, unharried by constant pressure and fear, but it does not confer special privileges upon them to retain permanently their positions or salary, nor permit their interference with the control or efficient operation of the public school system; and, notwithstanding it grants tenure to those who have taught the requisite period, it nonetheless empowers Boards of Education to discharge them for just cause in an orderly manner by the procedures specified."

Even though the Kansas court has never dealt with this issue, the problem has provided the basis for a wealth of litigation in other states. Court decisions on the subject can generally be divided into three categories: (1) those which give the school board complete discretion in who to terminate as a result of a

reduction in force; (2) those which give the school board discretion subject to it being exercised in good faith; and (3) those which require the school board to retain a tenured teacher when there is a nontenured teacher in a position for which the tenured teacher is qualified to teach.

A good example of those cases in the first category is *Dykeman v. Board of Education*, 210 Neb. 596, 316 N.W.2d 69 (1982). There the Board determined that it must reduce its staff in the high school business education department. Two teachers taught business education. Both were tenured and both had identical teaching certificates. In deciding which teacher to eliminate the Board considered the contribution each made to the activities program. The court held this was proper, stating "the selection of a teacher to be eliminated from the staff through a reduction in force is an executive or administrative function" subject to "limited review." 210 Neb. at 599. Similarly, in *Reed v. Edgeley Public School Dist. No. 3*, 313 N.W.2d 775 (N.D. 1981), the teacher argued that when declining enrollments force a reduction in the teaching force the school board must articulate its reasons for choosing which particular teacher to nonrenew. The court held the North Dakota statute which required the school board to give "maximum consideration to basic fairness and decency" in making its decision did not mandate such an articulation.

An example of the second category of cases is *Chester v. Harper Woods Sch. Dist.*, 87 Mich. App. 235, 273 N.W.2d 916 (1978). There a drop in revenue precipitated a reduction in teaching personnel during which the plaintiffs, three tenured school teachers, were laid off. When financial conditions improved the school board hired new, probationary teachers to fill the vacancies created by the three plaintiffs. A Michigan statute required a tenured teacher who had been terminated because of a reduction in force to be appointed to the first vacancy for which he was "certified and qualified." The court held the term "qualified" referred to "some level of competence above and beyond mere certification, the criteria of which must be established by the school board." As such, the court's review was limited to whether the reduction in force "was not made in good faith but amounted to a subterfuge" to avoid the tenure act's protections. 87 Mich. App. at 242, 244.

In *Paradis v. School Administrative Dist., Etc.,* 446 A.2d 46 (Me. 1982), the plaintiff, a tenured teacher, was one of six teachers in the language arts department and one of two French teachers. The other French teacher was not tenured. The school board decided a reduction in its teaching force was necessary and the plaintiff received notice she was to be nonrenewed. She also learned, however, the other French teacher was to be retained. The court upheld the school board's action. It first noted the tenure law gave the school board the right to terminate a teacher's contract " 'when changes in local conditions warrant the elimination of the teaching position for which the contract was made.' " p. 50. This statute, the court said,

"imposes on the Board only an implied duty to exercise that reserved power in good faith for the best interests of education in the district. A duty of good faith, both in determining whether changes in local conditions warrant elimination of teaching positions and in selecting the specific individuals whose contracts are to be terminated, is readily inferable from the statutory reservation of power in the school directors. To go beyond that inference and declare judicially that a seniority rule restricts the school directors in the exercise of their reserved power, would be to add a substantive provision to section 161(5) that is conspicuously absent from the legislative enactment." 446 A.2d at 50.

Against a mere good faith standard the school board's action in this case might be upheld. There was no evidence the school board was out to get Ms. Coats. The evidence showed the school board considered various alternatives when it became necessary to reduce its teaching staff. Arguably, the school board simply picked the alternative which, in its opinion, was best for the school district.

A mere good faith requirement, however, has the potential of emasculating the Teacher Tenure Law. When probationary teachers are retained while a tenured teacher certified to teach the same subjects is terminated, much of the theoretical protection of the Teacher Tenure Law is lost. This is true regardless of the school board's good faith.

Some states have attempted to provide more protection to tenured teachers, both through legislation and judicial rules. A good example is New Mexico. In *Swisher v. Darden,* 59 N.M. 511, 287 P.2d 73 (1955), the court held when a tenured teacher was nonrenewed as a result of a reduction in force the school board was required to "show affirmatively that there was no position available" which the tenured teacher was qualified to

teach. 59 N.M. at 516. The fact a nontenured teacher is retained in a position for which the tenured teacher is qualified makes that position "available" to the tenured teacher. *Penasco Independent School District No. 4 v. Lucero*, 86 N.M. 683, 526 P.2d 825 (Ct. App. 1974); *Fort Sumner Municipal School Board v. Parsons*, 82 N.M. 610, 485 P.2d 366 (Ct. App. 1971).

The reason for such a rule was well stated in *Watson v. Burnett*, 216 Ind. 216, 222, 23 N.E.2d 420 (1939):

"If a justifiable decrease in the number of teaching positions should be held to give to the trustee the power to choose between tenure and nontenure teachers, both of whom are licensed to teach in the teaching position which remains, he is thereby given the power to nullify the Teachers' Tenure Act, and to discharge without cause a teacher who has, by reason of having served satisfactorily as a teacher during the specified period, secured a tenure status and an indefinite permanent contract. To countenance such an interpretation of the law would be to permit the trustee to do indirectly that which the law expressly forbids him to do directly."

The problem with such a rule is in determining whether the tenured teacher is "qualified" to teach in the nontenured teacher's position. As seen in the *Chester v. Harper Woods Sch. Dist.*, 87 Mich. App. 235, case, some jurisdictions consider "qualified" to mean more than mere certification to teach in the position. In such a case the school board is given discretion to make the final determination as to whether the tenured teacher is qualified. In other instances the school board is left with little discretion. In Illinois, for example, the tenured teacher need be only "legally qualified" to teach in the nontenured teacher's position. Illinois courts retain a large amount of supervisory control, even to the point of ordering reassignment to accommodate the tenured teacher. See *Peters v. Bd. of Education*, 106 Ill. App. 3d 77, 62 Ill. Dec. 16, 435 N.E.2d 814 (1982); *Higgins v. Bd. of Education*, 101 Ill. App. 3d 1003, 57 Ill. Dec. 446, 428 N.E.2d 1126 (1981). Finally, other states take a more moderate approach. In Delaware, for example, the tenured teacher must be retained if there are nontenured teachers "teaching in the general area of competence, interest and training" of the tenured teacher. *Bd. of School Trustees v. O'Brien*, 56 Del. 79, 85, 190 A.2d 23 (1963).

We reject the argument the school board has absolute discretion to nonrenew whomever it wishes in reduction of force situations. It should first conduct a good faith examination of the

competence, interest and training of all teachers in the area where the reduction of staff is to occur. Where there are tenured and nontenured teachers in the department and all are qualified, the nontenured teachers should be the first terminated.

In the instant case Leota Coats is eminently qualified to teach language arts in either junior high or high school. It is uncontested she did a superior job of teaching and as chairperson in the most important department in school. The only criticism of her was that she demanded excellence of her students and graded them accordingly. We find such criticism unfounded and commend others to emulate her standards. No student can learn who cannot read or write. A school board cannot be permitted to terminate qualified tenured teachers under the guise of reduction in force while continuing to hire probationary teachers after an enrollment decline is readily apparent. Such would nullify the Teacher Tenure Law.

Here the school board set up specialties for teaching in junior or senior high school. Those categories are not recognized in either school board policy, certification or the law. We hold unless good cause is otherwise shown a tenured teacher may not be nonrenewed due to reduction in force until all nontenured teachers teaching subjects which the tenured teacher is qualified to teach are first terminated. Here there were several probationary teachers teaching subjects which Leota Coats was both certified and qualified to teach who were rehired while Ms. Coats was nonrenewed. As such the school board acted improperly in nonrenewing Ms. Coats.

The trial court also found the school board's appointment of its own attorney to the hearing committee violated Ms. Coats' right to due process. The school board argues this was error. Ms. Coats made a contemporaneous objection to the appointment of Mr. Russell at the hearing and argued the matter to both the district court and this court. Thus, the issue is properly preserved.

K.S.A. 72-5438 governs the procedure by which the hearing committee is formed. Each side designates one person to sit on the panel. These two people then designate a third person who serves as chairman of the panel. If the two hearing committee members cannot agree on a third person a district judge in the home county of the school district appoints a chairman. K.S.A. 72-5439 states the procedural requirements of the initial hearing.

That statute provides in pertinent part:

"The hearing provided for in K.S.A. 72-5438, shall afford procedural due process, including the following:

. . . . .

"(f) the right of the teacher to a fair and impartial decision based on substantial evidence."

Clearly the statutes place no express limitation on whom a party may appoint to serve on the hearing committee. The only requirement which must be met is the constitutional due process requirement which holds the method of decision must not "offend the concept of fundamental fairness." *Bogart v. Unified Sch. Dist. No. 298 of Lincoln Cty.,* 432 F. Supp. 895, 905 (D. Kan. 1977); *Haddock v. U.S.D. No. 462,* 233 Kan. 66, 661 P.2d 368 (1983). This carries with it some inherent limitations. The purpose of the hearing, as this court stated in *Gillett v. U.S.D. No. 276,* 227 Kan. at 78, "is to develop the grounds that have induced the board to give the teacher notice of its desire to discontinue her services, and to afford the teacher an opportunity to test the good faith and sufficiency of the notice." The due process hearing, then, is more of a fact-finding process. However, it still must be "fair and just, conducted in good faith, and dominated throughout by a sincere effort to ascertain whether a good cause exists for the notice given." 227 Kan. at 78. Even though it only results in a recommendation to the school board, the due process hearing is an integral part of the actual decision regarding nonrenewal. Fundamental fairness is thus necessarily applicable.

We conclude the school board's appointment of its own attorney to the hearing committee violated the rule of fundamental fairness. In a situation such as this the school board attorney has a conflict of interest. He is the person who prepared all the documents and gave the school board its legal counsel in arriving at its decision to nonrenew the teacher. Further, he has an obvious financial interest in confirming the school board decision. Such a blatant defiance of due process cannot be countenanced. We hold the school board's appointment of its own attorney to the hearing panel violated Ms. Coats' right to due process.

The judgment of the trial court is affirmed and the case is remanded with an order to reinstate Leota Coats and to deter-

mine the amount of back pay owed. Back pay shall include the difference between the salary Leota Coats receives in her present position, less transportation costs, and the salary she would have received had she been retained at Wellington, plus interest.