No. 61,961

KENNETH O. BUTLER, *Appellant,* v. BOARD OF EDUCATION, UNIFIED
SCHOOL DISTRICT NO. 440, HARVEY COUNTY, KANSAS, *Appellee.*
(769 P.2d 651)

Opinion filed
March 3, 1989.

*David M. Schauner,* of Kansas-National Education Association, of Topeka, argued the cause and was on the briefs for appellant.

*David C. Burns,* of Speir, Stroberg, Sizemore, Burns and Gillmore, P.A., of Newton, argued the cause and was on the brief for appellee.

*Cynthia Lutz Kelly,* of Kansas Association of School Boards, of Topeka, was on the brief *amicus curiae.*

The opinion of the court was delivered by

HERD, J.: This is a teacher nonrenewal case. Kenneth Butler appeals from the trial court's order upholding the decision of the Board of Education (Board) of Unified School District No. 440 in Harvey County to nonrenew his employment contact.

Before discussing the case on the merits, let us examine the issue of whether the trial court had jurisdiction of this case. To do this we must review the procedural facts in detail. Pursuant to K.S.A. 72-5443(c), the Board mailed Butler notice of its final decision to nonrenew on May 20, 1987; he received the notice that day. On June 5, 1987, Butler's attorney mailed a notice of appeal to the district court to the Board's attorney, along with a praecipe that summons be issued to the clerk of the Board of Education. Notice of appeal was mailed to the clerk of the district court on June 8, 1987, along with a check covering the filing fee issued by the Kansas National Education Association (KNEA).

In July, Butler discovered the district court had been having problems with its mail delivery and had never received the notice of appeal. The check for the filing fee remained uncashed. Butler thereupon filed a copy of the original notice with the clerk of the district court on July 24, 1987.

On August 24, 1987, the Board filed a motion to affirm along with a waiver of the service of summons. Neither the district court nor the Board noted the filing date of the notice until it was discovered through the Court of Appeals' order to produce sufficient documents to determine jurisdiction.

The question presented is whether the district court lacked jurisdiction because the notice of appeal from the Board's decision was not filed with the district court within 33 days from the Board's mailing of the notice of nonrenewal to Butler.

The question of jurisdiction is a matter which can be raised at any time. If the district court lacked jurisdiction to review the Board's action, we also have no jurisdiction since there is noth-

ing to review. *In re K-Mart Corp.*, 232 Kan. 387, 654 P.2d 470 (1982). The right to appeal is statutory and the timely filing of the notice of appeal is jurisdictional. *In re Lakeview Gardens, Inc.*, 227 Kan. 161, 605 P.2d 576 (1980); *Giles v. Russell*, 222 Kan. 629, 567 P.2d 845 (1977). Parties cannot convey jurisdiction on a court by failing to object to its lack of jurisdiction. *Western Light & Telephone Co. v. Toland*, 177 Kan. 194, 277 P.2d 584 (1954).

The filing of an untimely appeal is fatal save for a narrow range of exceptional circumstances. *Legg v. Topeka Halfway House, Inc.*, 7 Kan. App. 2d 669, 646 P.2d 1155, *rev. denied* 231 Kan. 800 (1982). These circumstances are not present in the case at bar. See *Schroeder v. Urban*, 242 Kan. 710, 750 P.2d 405 (1988) (good faith reliance on district court's improper extension of appeal time); *In re Hambelton*, 2 Kan. App. 2d 68, 574 P.2d 982, *rev. denied* 225 Kan. 844 (1978) (excusable neglect based on failure to learn of judgment); *Kittle v. Owen*, 1 Kan. App. 2d 748, 573 P.2d 1115 (1977) (papers tendered to judge, or last appeal day is holiday).

In *Atkinson v. U.S.D. No. 383*, 235 Kan. 793, 684 P.2d 424 (1984), we affirmed the Court of Appeals' decision at 9 Kan. App. 2d 175, 675 P.2d 917 (1984), and held the time for a teacher to appeal a board's nonrenewal begins to run with the mailing by the Board of the notice required by it under K.S.A. 72-5443. We further held where the notice is submitted by mail, the three-day extension of time permitted by K.S.A. 1988 Supp. 60-206(e) applies. Thus we held a teacher had 33 days in which to file a notice of appeal from the Board's order with the district court.

In *Atkinson*, we construed statutes since amended, but not in a manner relevant to the issues of the instant case. K.S.A. 72-5443(c) provides:

"If the members of the hearing committee are not unanimous in their opinion, the board shall consider the opinion, hear oral arguments or receive written briefs from the teacher and a representative of the board, and decide whether the contract of the teacher shall be renewed or terminated. The decision of the board under this subsection shall be submitted to the teacher not later than 30 days after the close of oral argument or submission of written briefs and such decision shall be final, subject to appeal to the district court as provided by K.S.A. 60-2101, and amendments thereto."

K.S.A. 1988 Supp. 60-2101(d) provides in pertinent part:

"If no other means for perfecting such appeal is provided by law, *it shall be sufficient for an aggrieved party to file a notice that such party is appealing*

*from such judgment or order with such subdivision or agency within 30 days of its entry,* and then causing true copies of all pertinent proceedings before such subdivision or agency to be prepared and filed with the clerk of the district court in the county in which such judgment or order was entered." (Emphasis supplied.)

Since no other means for perfecting an appeal of a school board's decision to nonrenew a teacher's contract is provided by law, K.S.A. 1988 Supp. 60-2101(d) governs.

Butler argues the language of K.S.A. 1988 Supp. 60-2101(d) does not require filing a notice of appeal with the court within 30 days, but only that he send a notice of appeal to the Board within 30 days. In *LeCounte v. City of Wichita*, 225 Kan. 48, 587 P.2d 310 (1978), we agreed with this construction of identical language in what was then K.S.A. 1975 Supp. 60-2101(a). In *LeCounte,* we held an employee appealing the decision of a city retirement board had 30 days to give the board his notice of appeal:

"Thereafter, the aggrieved party has a reasonable time to have prepared and filed with the district court the full record of the proceedings had before the administrative board or officer. Following an adverse decision by an administrative board or officer, the aggrieved party must be allowed sufficient time to have prepared the record of proceedings before the administrative board or officer. The record often includes a transcript of oral testimony presented at the hearing. To require the aggrieved party to have prepared and completed within a period of 30 days the entire record before the administrative board is not a reasonable requirement. The language used in 60-2101*(a)* indicates a legislative intent that only the notice of appeal need be filed within the 30-day period following filing of the order of judgment of the administrative board and *then* the aggrieved party is allowed a reasonable time to perfect the appeal by causing the record to be prepared and filed with the clerk of the district court." 225 Kan. at 54-55.

We cited *LeCounte* in *Atkinson* in support of our decision to begin counting the 30 days for notice of appeal from the day the board gave notice to the appellant. As *LeCounte* addresses the issue in this case while *Atkinson* turned on when the counting began, *LeCounte* controls. The 49 days between Butler's notice of appeal to the board and his actual filing of the appeal with the district court is reasonable.

One further jurisdictional question is raised by the Board: Whether Butler's notice to the Board's counsel qualified as notice to the Board. Service to the Board's attorney resulted in actual notice to the Board, which, through its attorney, answered and waived service of summons. K.S.A. 1988 Supp. 60-2101(d)

does not require service of process; therefore, proper service is not the issue here. See *In re Gantz,* 10 Kan. App. 2d 299, 300, 698 P.2d 385, *rev. denied* 237 Kan. 887 (1985). In *Gantz,* the Court of Appeals found the petitioner had adequately given an administrative agency notice of his intention to appeal to the district court by mailing a notice of appeal to the agency's legal division. Here, the Board did not have a legal *division,* but its attorney met the same needs, and service to the attorney gave notice to the Board. Where an attorney acts on a matter for a party, there is a presumption the party had notice of information concerning the matter received through the attorney. See *Sawtelle v. Cosden Oil & Gas Co.,* 128 Kan. 220, 226, 277 Pac. 45 (1929); *Alexander v. Russo,* 1 Kan. App. 2d 546, 555-56, 571 P.2d 350, *rev. denied* 222 Kan. 749 (1977). We hold the district court had jurisdiction.

Let us now turn to the pertinent facts of this case. This is another case in which a nationwide decline in enrollment in the industrial arts has caused a school board to nonrenew a teacher certified in that area. See *Bauer v. Board of Education,* 244 Kan. 6, 765 P.2d 1129 (1989). Butler, although tenured, was the lowest in seniority of three teachers certified to teach industrial arts. Thus, it was his contract which was nonrenewed when the Board determined the school district needed to reduce the teaching force in this area. The validity of the Board's decision to reduce force is not disputed—enrollment has steadily decreased from a high of over 250 in 1981 to a low of 139 in 1985. Butler objects instead to the Board's failure to consider a schedule under which he would take classes assigned to nontenured teachers. The only other area in which Butler was certified to teach as of March 31, 1986, when the Board made its decision to nonrenew, was physical education, grades 7 through 12.

On January 13, 1986, Earl Guiot, the superintendent for the 1985-86 school year, informed the Board that the district had inherited an over-staffing problem from his predecessor, Dr. Richard Henderson. Two of the reasons for the problem were the hirings of Steven Seirer and Gary Musselman in 1985 as head high school football and basketball coaches without otherwise reducing staff. Superintendent Guiot informed the Board the district was over-staffed in industrial arts. On March 17, 1986, Guiot suggested that either Butler's contract be nonrenewed or that he become certified for elementary physical education.

On March 31, 1986, the Board compared Butler's qualifications with those of Seirer, the nontenured football coach. Butler was certified to teach physical education, grades 7 through 12. Seirer was currently teaching physical education for grades 5 through 7, freshman physical education with a required health component, and two advanced high school physical education classes. The Board decided it was necessary to retain Seirer because Butler was not certified to teach elementary physical education or health and could thus take over only three of Seirer's six classes. The Board did not attempt to construct a schedule in which Butler could be retained full or part-time by taking those physical education classes he was certified to teach and those periods for which certification was unnecessary, such as lunchroom supervision.

The Board adopted a resolution to nonrenew Butler's contract, and the superintendent informed him of the Board's decision after the meeting. Written notice was provided pursuant to K.S.A. 72-5443 and K.S.A. 1988 Supp. 72-5438. Butler requested a due process hearing pursuant to K.S.A. 72-5436 *et seq.*, which was held on November 6-7, 1986, with the hearing committee recommending his reinstatement in a 2-1 decision. As the committee was not unanimous in its finding, its recommendation was not binding on the Board, pursuant to K.S.A. 72-5443(c). After hearing arguments of counsel on May 1, the Board reviewed the record and made its own findings of fact on May 18, 1987, rejecting the committee's recommendation. Butler then appealed to the district court, which affirmed the Board.

K.S.A. 1988 Supp. 60-2101(d) gives the district court jurisdiction to review the Board's decision. The district court may not hear the case de novo, but is limited to deciding whether: (1) The Board's decision was within the scope of its authority; (2) its decision was substantially supported by the evidence, and (3) it did not act fraudulently, arbitrarily, or capriciously. In *Gillett v. U.S.D. No. 276*, 227 Kan. 71, 75, 605 P.2d 105 (1980), we held:

"In determining cases involving the dismissal or nonrenewal of a teaching contract, the courts are obligated to consider the rights of the teacher, the rights of the school board, and the rights of the school children to receive a quality education in a proper school atmosphere. In every such case, the challenge presented to the court is to provide a decision, fair and equitable both to the teacher and to the school board, with a minimum amount of disruption of the educational opportunity for the children."

We held in *Million v. Board of Education,* 181 Kan. 230, Syl. ¶ 1, 310 P.2d 917 (1957), that, while the Teacher Tenure Act protected tenured teachers from "unjust dismissal of any kind— political, religious or personal," it "does not confer special privileges or immunities upon them to retain permanently their positions or salary, nor permit their interference with the control or efficient operation of the public-school system."

Where the district court's decision is appealed, we review the Board's decision as though the appeal has been made directly to us, and we are subject to the same limitations of review as the district court. *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 451, 436 P.2d 828 (1968).

Let us now review the law pertaining to the overriding substantive issue in this case: Whether the district court's decision misapplies our holding in *Coats v. U.S.D. No. 353,* 233 Kan. 394, 662 P.2d 1279 (1983). Leona Coats was a tenured English teacher and chairperson of the high school language arts department. The school board decided to eliminate one full-time high school English teacher because of declining student enrollment. Ms. Coat's contract was nonrenewed because she had the least seniority of the high school English teachers. We held the Board's action was arbitrary and capricious in that Ms. Coats was not considered for a junior high English position, for which she was certified, and for which nontenured junior high English teachers had been retained. We found good faith alone was inadequate protection of teacher tenure rights granted by the legislature pursuant to K.S.A. 72-5436 *et seq.* We therefore held "unless good cause is otherwise shown a tenured teacher may not be nonrenewed due to reduction in force until all nontenured teachers teaching *subjects* which the nontenured teacher is qualified to teach are first terminated." 233 Kan. at 402. (Emphasis supplied.)

The hearing committee found it significant that we used the word "subjects" in our holding, rather than the word "position." It concluded that by this terminology we had put "a very heavy burden" on the Board to not only ascertain whether there was a *position* held by a nontenured teacher that Butler was qualified to fill, but whether a piecemeal position could be created for Butler by taking subjects from nontenured teachers or aides for which Butler was certified or for which certification was unnec-

essary. The Board had not established a system of departmentalization in the school.

The Board, while admitting our use of "subjects" in pronouncing the rule of law in *Coats,* protested that we did not intend to extend the factual situation in *Coats* so that a Board would be required to create a piecemeal position for a tenured teacher without regard to the needs of the students or the economics of the school system. The Board quoted our language in support of its argument:

"When probationary teachers are retained while a tenured teacher certified to teach the *same* subjects is terminated, much of the theoretical protection of the Teacher Tenure Law is lost. . . .

. . . .

"[The school board] should first conduct a good faith examination of the competence, interest and training of all teachers *in the area* where the reduction of staff is to occur. Where there are tenured and nontenured teachers *in the department* and all are qualified, the nontenured teachers should be the first terminated." (Emphasis supplied.) 233 Kan. at 400-02.

The district court agreed the Board's action was not arbitrary and capricious under *Coats.* It noted testimony that the schedules were never created with a goal in mind of creating a position for a teacher and that Butler had received prior notice that it would be wise to expand his certification. The court found:

"While there is evidence that the Board of Education possibly could have rearranged teaching assignments that did not require certifications . . . to accommodate Mr. Butler, . . . [this] would have not made proper use of either the talents of Butler nor the economic realities facing school districts as the duties he could perform at that time could be provided by aides and noncertified persons at considerably less cost."

It should be noted that the hearing committee found it necessary to make a finding that Seirer's position as head football coach was not "good cause" for his retention over Butler. Butler contends the superintendents made sure to retain the services of coaches and would only secondarily find them specific teaching responsibilities. Dr. Henderson did not specify what courses Seirer would teach when he hired him as head football coach. Seirer learned of his specific teaching assignments only a week before the 1985-86 school year began. The Board stated in its findings of fact that Seirer's coaching duties were not considered in making its decision.

A preliminary issue is whether the Board was required to allow Butler additional time to expand his certification.

In the spring of 1984, Dr. Henderson, superintendent of schools during the 1983-84 school year, met with Butler and recommended he attempt to become certified in another area because of declining enrollment in industrial arts. On February 20, 1986, Guiot, the superintendent at the time, advised Butler of the possibility of a reduction of staff in industrial arts and inquired if Butler could teach in another area. On March 19, 1986, the superintendent met with all three industrial arts teachers, advised them of the possible reduction and asked if any of them were qualified, or could get qualified, to teach in several enumerated areas, among them elementary school education. None of them indicated he was or could get certified in the named areas.

Under the district's scheduling policy, teacher positions were rearranged yearly to meet the needs of the students. A full-time position is six classes and one planning period.

Butler contends he should have been assigned to teach the three physical education classes for which he was certified and which were scheduled for Seirer, and two periods assigned to Musselman, the nontenured basketball coach, for which no certification was required, namely, Current Events and lunchroom supervision. He contends the remaining hour should be made up of either freshman physical education, for which he is only partially qualified, or other positions for which no certification is required, such as study hall monitor, kindergarten physical education aide, elementary counselor, or athletic director. The duties of these positions can be more inexpensively performed by noncertified personnel.

Such changes would have required at least two nontenured teachers be reduced to part-time. Their positions could not be eliminated entirely, as these teachers were needed to teach courses, such as Musselman's four hours of social science, and Seirer's three hours of elementary physical education classes, for which Butler was not certified.

On April 3, 1986, Butler informed the superintendent he was having his transcript evaluated to see if there was some other area in which he could be certified. Over the summer, Butler became certified to teach 5th and 6th grade physical education and was thus certified to teach five scheduled classes besides industrial arts as of the commencement of the school year. The

Board was not informed of this certification, however, until school had been in session for several weeks.

Neither the Board nor Butler knew at the time the Board had to make its decision that Butler would be able to expand his accreditation over the summer. Even if the Board had known of the possibility, holding the 5th and 6th grade physical education classes for him would have placed it in a precarious position. If Butler had failed to obtain certification over the summer, the school year would have commenced with no teacher for these classes.

Pursuant to K.S.A. 72-5411, the Board is required to give notice of nonrenewal to a teacher by April 10 of each year. At the time the Board made its decision, Butler was certified to teach only three of the six scheduled physical education classes taught by Seirer; namely, 7th grade and two advanced physical education classes. Following the majority rule, we hold a teacher's certification status prior to April 10 is controlling absent a specific agreement otherwise. See *Evans v. Mt. View School,* 34 Colo. App. 167, 525 P.2d 1172 (1974); *Hancon v. Board of Education,* 130 Ill. App. 3d 224, 474 N.E.2d 407 (1985); *Shandy v. Portland School Dist. No. 1,* 54 Or. App. 420, 634 P.2d 1377 (1981).

The next issue is whether the Board violated *Hein v. U.S.D. No. 238,* 12 Kan. App. 2d 33, 733 P.2d 1270 (1987). The school board in *Hein* refused to accept a tenured teacher's offer to become certified to teach the board's newly created class. The teacher had been certified to teach the English IV class opened by the retirement of another teacher. The class had at some times contained the elements of speech and drama. By changing the name of the course, however, the Board created a class for which speech certification was required, certification which Hein did not have. By this change, the Board was able to nonrenew Hein's contract and create a position for a less expensive nontenured teacher.

The Court of Appeals found the Board's action to be arbitrary, capricious, and unreasonable, and held a school board may not, in order to hire a nontenured teacher, change a course in a nonsubstantive way where the change has the effect of nonrenewing a tenured teacher's contract, unless it acts with the utmost good faith. 12 Kan. App. 2d 33, Syl. ¶ 2.

Butler argues the Board was similarly unreasonable in requir-

ing health as a separate component of freshman physical education. The circumstances differ significantly from those in *Hein,* however. The Board maintains the component was added as a requirement for graduation in response to a mandate from the State Board of Education. In addition, the change was made an entire year before the decision to nonrenew Butler's contract was made, whereas, in *Hein,* the change was made in the year in which the teacher was nonrenewed. Thus, the change here is substantive with the indicia of good faith.

Butler objects, however, that in the previous year he "team taught" a coed freshman physical education class with a female teacher certified to teach health. The female teacher was thus required to teach the health component of the class to the male as well as female students. Superintendent Guiot considered this arrangement unacceptable. The next year, the year of Butler's nonrenewal, the Board policy was changed to require health classes be taught by a teacher of the same sex as the students. The health class contains elements of anatomy and sex education, rendering the class of a sensitive nature. There is no evidence the policy was changed to effect nonrenewal of Butler's contract.

Both the change of requiring health as a component of freshman physical education and the change of policy requiring the component to be taught by a teacher of the same sex as the students are changes of substance, not made for the purpose of replacing a tenured teacher with a nontenured teacher. The changes are thus outside the scope of *Hein* and within the Board's authority to act for the benefit of the students. See *Gillett,* 227 Kan. at 75.

The issue then is whether the school board is required under *Coats* to create a position for a teacher who is certified for only three classes taught by nontenured teachers. This could have been accomplished by Seirer, Butler, and Musselman all being assigned part-time positions. Butler argues the Board could have created a full-time position for him by assigning three periods to him which could be taught by noncertified personnel at less cost. Some of these assignments are covered by supplemental contracts. See K.S.A. 72-5412a; *Hachiya v. U.S.D. NO. 307,* 242 Kan. 572, 750 P.2d 383 (1988). In *Hachiya* we found the provisions of K.S.A. 72-5412a mandatory and held a school district cannot

require a teacher to perform supplemental duties as part of his primary contract. We hold that, just as a school board cannot demand that a teacher perform supplemental duties as part of his primary contract, neither can a teacher demand that he be assigned supplemental duties as part of his primary contract.

Other jurisdictions have reviewed the issue before us. Although each case may be distinguished on the basis of different statutory and case law background, each provides some guide to public policy.

Minnesota requires realignment of schedules where reasonably practical to accommodate tenured teachers. The state has a "bumping" statute which gives preference to tenured teachers in filling *positions*. Minn. Stat. § 125.17 (1988). In *Strand v. Special School Dist. No. 1*, 392 N.W.2d 881, 885 (Minn. 1986), the Minnesota Supreme Court stated:

"[W]e must reject the view that a teaching assignment comprising two or more subjects and requiring multiple licensure is an individual 'position' entitled to protection only in its entirety, because not only does this definition offer virtually limitless opportunity for manipulation through malice, caprice or political or partisan trends, but the purpose of the Tenure Act to prevent arbitrary demotions or discharges can be equally frustrated for the sake of convenience or without improper motive through sheer inertia."

Pennsylvania requires realignment only if practicable. The burden of designing alternative schedules lies with the teacher. In *James v. Big Beaver Falls A. Sch. D.*, 98 Pa. Commw. 319, 325, 511 A.2d 900 (1986), the court did not require the teacher's proposed piecemeal schedule, stating:

"The result of this would be not a domino effect, where each employee bumps a less senior one, but a snowballing effect where the bump of [one teacher] requires realignment of two other employees just to accommodate her position. For the District to conclude that such practices would be impractical is certainly understandable."

In *May v. Ala. State Tenure Com'n*, 477 So. 2d 438 (Ala. App. 1985), the court held realignment of schedules is not required where a tenured teacher would have to take classes from several different positions in order to create a position for which she was certified. The court held such piecemeal taking could possibly affect the quality of instruction and the positions of other tenured teachers. Statutory language and prior case law spoke to a tenured teacher's *position* rather than subjects taught. Ala. Code § 16-24-8 (1975); 477 So. 2d at 440.

An Illinois case is factually similar to the case at bar. A tenured teacher was certified to teach English and World History. When a reduction in force was required, she argued she should be assigned the World History classes of a nontenured teacher and a portion of English classes which included journalism (which she was not certified to teach). The Illinois Supreme Court found that to permit a teacher to create a piecemeal position by taking and combining courses from other teaching positions, even if held by nontenured teachers, "would usurp and, if extended, destroy the authority of the school board." *Peters v. Board of Education*, 97 Ill. 2d 166, 172, 454 N.E.2d 310 (1983). Illinois, like Minnesota, has a "bumping" statute which prohibits dismissal of a tenured teacher who is legally qualified to hold a *position* currently held by a nontenured teacher. Ill. Rev. Stat. ch. 122, ¶ 24-12 (1987).

It is clear this issue must be resolved on a case-by-case basis. A tenured teacher has the right to be retained in the school system if it can be accomplished by assigning to the tenured teacher subjects taught by a nontenured teacher. The task is easy if the nontenured teacher is teaching a full load and the tenured teacher is certified in all of the classes. But in this case we have a tenured teacher not certified to teach all of the nontenured teacher's subjects. Thus, the balancing test enunciated in *Gillett* must be used, looking to the rights of the students and Board as well as the rights of the teacher. Under the facts of this case, the test weighs in favor of the students' rights. To arrange a schedule for Butler, the Board would have to overhaul the entire class schedule and would end up with three part-time teachers. In the absence of bad faith, a board is not required to make such a drastic rearrangement of its teaching assignments.

The judgment is affirmed.