No. 53,165

VERONICA KELLY and EVELYN COCHRAN, *Appellants,* v. KANSAS CITY, KANSAS COMMUNITY COLLEGE, Wyandotte County, Kansas, *Appellee.*

(648 P.2d 225)

Opinion filed July 22, 1982.

*Patricia E. Riley,* of Ralston, Frieden & Weathers, P.A., of Topeka, argued the cause and was on the brief for the appellants.

*George Maier, Jr.,* of Weeks, Thomas & Lysaught, Chartered, of Kansas City, argued the cause and *Howard L. Rosenthal* and *Edmund S. Gross,* of the same firm, were with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is an appeal from a district court order upholding the termination of the employment contracts of two tenured teachers in the nursing department at the Kansas City, Kansas Community College (KCKCC).

The nursing department of the KCKCC was created in 1970, offering an associate degree in nursing. Evelyn Cochran was hired as an instructor that year. Veronica Kelly joined the teaching staff in 1971. The early years of the nursing program were uneventful. It started well with complete cooperation between faculty and administration. Eventually the job of director of the

nursing department was offered to Evelyn Cochran when the former director resigned. Ms. Cochran declined the position because the travel requirements of the job would have taken too much of her time away from her family. Donna Hawley, an instructor, was subsequently promoted to director of the nursing department in 1973. Initially Ms. Hawley got along well with Cochran and Kelly. Her evaluations of them during this period were favorable.

The relationship between Hawley and the two teachers began to deteriorate in the spring of 1976. The difference in their professional responsibility was underscored and Cochran and Kelly became critical of Hawley's administration.

The problems between the nursing director and the two instructors affected the morale of the whole department. Testimony by other staff members indicated there was less cooperation and a decline in morale among the faculty beginning the latter part of 1976. Alton Davies, president of KCKCC, testified he thought the problems in the nursing department centered around the responsibility for the direction of the nursing program.

Whatever the cause of the problems, they were manifested in various ways. Donna Hawley testified there was "constant sniping" in nursing staff meetings. Faculty meetings were "tense" and "uneasy." Evelyn and Veronica were the more "vocal" staff members at these meetings and made others feel "uncomfortable." They were accused of being "uncooperative" with other instructors and refusing to provide information and test materials to other members of the nursing department. For instance, on one occasion Veronica Kelly and another instructor had scheduled the same room for a test December 12, 1976. Veronica refused to change rooms because she said she had cleared the room through the administration. The other instructor notified Donna Hawley. Donna found another room and told Veronica to move. She did. Evelyn Cochran allegedly cancelled her classes one day without approval from her superiors. She also "objected" to a statement written by Donna Hawley and presented at a departmental meeting. In August of 1977, Ms. Cochran and Ms. Kelly put so much pressure on Lorene Massa, another instructor, to ally herself with them, that they had her in tears, "crying hysterically." In October of 1977, a nursing instructor reported Ms. Kelly was "disrupting" patients at Bethany Hospital. Later, a student requested permis-

sion to take exams early. Veronica Kelly refused but Donna Hawley overruled her. The student, however, decided not to take the exams because it would create problems between Ms. Kelly and Ms. Hawley.

By the end of 1977 the nursing faculty was engaged in a tug-of-war. The staff members were split with Ms. Cochran and Ms. Kelly and several others on one side and Donna Hawley and a majority of the instructors on the other.

Near the end of the 1977-78 school year Donna Hawley recommended to Mr. Ramsey, the Dean of Instruction at KCKCC, that the contracts of Evelyn Cochran and Veronica Kelly be terminated. He rejected this recommendation. At the end of the 1977-78 school year Hawley resigned in an attempt to solve the problems.

Lorene Meagher was hired to replace Donna Hawley. Ms. Meagher's presence, however, did little to ease the situation. She testified complaints of not being able to work with Cochran and Kelly increased after she took over. She testified she thought Kelly was a capable instructor but intolerant of others. Mr. Ramsey testified the two continued to be uncooperative, with Cochran refusing to supply Ms. Meagher with teaching materials and making derogatory comments about other staff members in meetings. Kathy Fletcher testified that during the 1978-79 school year, her first as an instructor at KCKCC, she gave a test which Veronica Kelly helped to critique. She stated Ms. Kelly and another instructor were "picking everything apart." Another time Ms. Kelly repeatedly criticized Ms. Fletcher for not reviewing her first test with other members of her teaching team before giving it. Fletcher ended up in tears.

The incident which appears to have directly precipitated this lawsuit occurred in the spring of 1979 when representatives of the State Board of Nursing visited the school. The Board is the agency which accredits the nursing programs throughout the state. While at the school the Board representatives met with faculty members to obtain their comments regarding the good and bad aspects of the nursing program. During this meeting Evelyn Cochran advised the Board representatives that the administration did not support her. Veronica Kelly also advised the board representatives of some of the personality conflicts present at the school. Ms. Meagher testified that after the meeting Sister

Mary Carol Conroy, one of the Board representatives, told her, "You must get this faculty problem solved or plan on closing your doors." The Board representatives identified the problems of faculty dissension and recommended a group process might be initiated to help the faculty work together productively. After the board representatives left, Ms. Meagher met with Dean Ramsey and President Davies to decide what to do about the problems. She recommended nonrenewal of Cochran's and Kelly's contracts. Ramsey and Davies agreed. The KCKCC Board of Trustees approved this recommendation on April 3, 1979. Letters were sent to the two instructors on April 12, 1979, indicating the decision to terminate their contracts because of "1. Conduct detrimental to the nursing program; and 2. Inability to cooperate with and maintain harmony among the staff."

Both instructors requested a due process hearing pursuant to the provisions of K.S.A. 72-5436 *et seq.* A hearing committee was formed and the hearing was held on the 6th, 7th, 8th, 10th and 13th days of August, 1979.

On August 21, 1979, the hearing committee made its report, finding the Board had not sustained its burden of proof. It recommended by a two-to-one vote the two teachers be renewed for the 1979-80 school year. A minority report was filed.

After considering the reports and hearing oral argument of the parties the KCKCC Board of Trustees rejected the hearing panel's recommendation and voted to terminate the teachers' contracts. The Board decision was appealed to the district court where it was affirmed and the minority report of the hearing panel adopted. This appeal followed.

At the outset it should be noted that in reviewing a district court's decision the Supreme Court will, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, make the same review of the administrative tribunal's action as does the district court. *U.S.D. No. 461 v. Dice,* 228 Kan. 40, 49, 612 P.2d 1203 (1980); *Stice v. Gribben-Allen Motors, Inc.,* 216 Kan. 744, 534 P.2d 1267 (1975); *Morra v. State Board of Examiners of Psychologists,* 212 Kan. 103, 106, 510 P.2d 614 (1973). That said, it should also be noted the district court's scope of review on appeal is very limited. The applicable rule was first stated in *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 450, 436 P.2d 828 (1968):

"A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, the tribunal acted fraudulently, arbitrarily or capriciously, whether the administrative order is substantially supported by evidence, and whether the tribunal's action was within the scope of its authority."

This three-pronged standard has been repeated frequently. See, e.g., *Kansas Dept. of Health & Environment v. Banks*, 230 Kan. 169, 172, 630 P.2d 1131 (1980); *U.S.D. No. 461 v. Dice*, 228 Kan. at 50; *Olathe Hospital Foundation, Inc. v. Extendicare, Inc.*, 217 Kan. 546, 553, 539 P.2d 1 (1975); *Hukle v. City of Kansas City*, 212 Kan. 627, 635, 512 P.2d 457 (1973).

Appellants first contend the trial court erred in sustaining the Board of Trustee's action because the Board made no distinction between the two teachers in reaching its decision. Appellants also argue there is no substantial evidence to support the Board's decision. These two issues are closely related and will therefore be discussed together. Both teachers are charged with the same complaint. They designated the same hearing committee. Because of the identity of the committee, witnesses and reasons for nonrenewal, the teachers agreed to consolidate their due process hearings. From that beginning the committee made a consolidated finding that the Board did not sustain its burden of proof and recommended renewal of their contracts. The Board then made a consolidated order nonrenewing both teachers. Appellants maintain the use of the consolidated order lacked the essentials of due process because by its nature it was based on cumulative evidence against both teachers rather than on individualized evidence.

We think resolution of this issue is dependent on the evidence. If there is substantial evidence to support the actions of the Board against each teacher, its action is not objectionable even though the order was not individualized, particularly since the teachers agreed to the consolidated hearing. Let us examine the evidence to determine if it substantially supports the Board's order. We have previously defined substantial evidence as that which possesses relevance and substance and which furnishes a substantial basis of fact from which the issue can reasonably be resolved. *U.S.D. No. 461 v. Dice*, 228 Kan. at 50; *Brinson v. School District*, 223 Kan. 465, 473, 576 P.2d 602 (1978). The evidence in support of the Board's decision is that Veronica Kelly and Evelyn Cochran were both difficult for the administration and other

teachers to work with. It disclosed that one director of nursing resigned because of them, but the problem persisted under the new director. The cumulative evidence indicated Kelly and Cochran aspired to administer the nursing school without benefit of portfolio. Their efforts consistently undermined the director of nursing. This caused a serious morale problem within the faculty. There was evidence that both teachers refused to cooperate with the administration or other teachers. Admittedly the evidence was controverted but there was substantial evidence to support the complaints of "conduct detrimental to the nursing program" and "inability to cooperate with and maintain harmony among the staff" on the part of each teacher. There is no merit to this issue.

Appellants next argue the Board's decision to nonrenew their contracts was arbitrary, capricious and outside the scope of its authority because the Board failed to independently review the transcript of the hearing committee's record before rejecting its recommendation. Appellants took the depositions of the members of the Board of Trustees and discovered that of the six board members only five voted on the final decision to nonrenew appellants' contracts. One member read the transcript in its entirety. One member spent forty-five minutes perusing it and looked at none of the exhibits. One spent two to five hours reading parts of the transcript but did not examine the exhibits, while the other two neither read the transcript nor examined the exhibits.

Since there is a presumption the deciding officials have considered the record and all other available evidence as well as arguments of counsel, let us first consider the question of whether an aggrieved party can probe the mental processes of a decision-maker. This issue was thoroughly considered in the four *Morgan* cases. *U.S. v. Morgan,* 313 U.S. 409, 85 L.Ed. 1429, 61 S.Ct. 999 (1941); *U.S. v. Morgan,* 307 U.S. 183, 83 L.Ed. 1211, 59 S.Ct. 795 (1939); *Morgan v. U.S.,* 304 U.S. 1, 82 L.Ed. 1129, 58 S.Ct. 773 (1938); *Morgan v. U.S.,* 298 U.S. 468, 80 L.Ed. 1288, 56 S.Ct. 906 (1936).

The *Morgan* litigation commenced with an action to restrain enforcement of an order of the Secretary of Agriculture fixing the maximum rates for buying and selling livestock at the Kansas City Stockyards under the Stockyards and Packers Act. The secretary was required to make an administrative order "after full

hearing." A lengthy hearing was had before an examiner with oral argument before the assistant secretary of agriculture. The secretary then made the decision. Morgan complained the secretary had neither read any of the evidence nor heard the oral argument. After numerous hearings and trials where the secretary was questioned regarding his mental processes in making the order, the court resolved the issue in *U.S. v. Morgan,* 313 U.S. 409, 422, stating:

"But the short of the business is that the Secretary should never have been subjected to this examination. The proceeding before the Secretary 'has a quality resembling that of a judicial proceeding.' [Citation omitted.] Such an examination of a judge would be destructive of judicial responsibility. We have explicitly held in this very litigation that 'it was not the function of the court to probe the mental processes of the Secretary.' [Citation omitted.] Just as a judge cannot be subjected to such a scrutiny, [citation omitted], so the integrity of the administrative process must be equally respected."

This *Morgan* case has not been reversed. However, in *Singer Sewing Machine Company v. N. L. R. B.,* 329 F.2d 200, 208 (4th Cir. 1964), the court ratified and explained the rule:

"[W]e conclude, where a prima facie case of misconduct is shown, justice requires that the mental process rule be held inapplicable."

As stated in *K.F.C. National Management Corp. v. N.L.R.B.,* 497 F.2d 298, 304 (2nd Cir. 1974):

"Thus what emerges from the *Morgan* quartet is the principle that those legally responsible for a decision must in fact make it, but that their method of doing so . . . is largely beyond judicial scrutiny."

We conclude that absent statutory authority an administrative body performing a quasi-judicial function is not subject to inquiry concerning its mental processes in reaching a decision. See *Mobil Pipeline Co. v. Rohmiller,* 214 Kan. 905, 923-24, 522 P.2d 923 (1974); *Sebits v. Jones,* 202 Kan. 435, 438, 449 P.2d 551 (1969).

The evidence of the Board's mental processes was thus impermissibly obtained and should normally have been excluded. In this case, however, the parties stipulated the depositions into the record. As such we shall consider this evidence in our discussion.

Appellants claim is that the failure of the Board to independently review the transcript of the hearing before rejecting the hearing committee's recommendation amounted to a denial of due process. First, we must decide what process is due under

K.S.A. 72-5436 *et seq.*, the Teacher Tenure Law. K.S.A. 72-5443 governs the procedure after the hearing panel has made its recommendation:

"Unless otherwise agreed to by both the board and the teacher, the hearing committee shall render a written recommendation not later than thirty (30) days after the close of the hearing, setting forth its findings of fact and recommendation as to the determination of the issues. The recommendation of the hearing committee shall be submitted to the teacher and to the board which shall, after considering the hearing committee's recommendation and after hearing oral argument or receiving written briefs from the teacher and a representative of the board, decide whether the teacher's contract shall be renewed or terminated, which decision shall be final, subject to appeal to the district court as provided by K.S.A. 60-2101. The decision of the board shall be submitted to the teacher not later than thirty (30) days after the close of oral argument or submission of written briefs."

It should be noted this statute contains no requirement the board members actually attend the hearing or accept the hearing panel's recommendation. *U.S.D. No. 461 v. Dice,* 228 Kan. at 48-49.

Appellants rely heavily on *Coggins v. Public Employee Relations Board,* 2 Kan. App. 2d 416, 581 P.2d 817, *rev. denied* 225 Kan. 843 (1978). There the Kansas Public Employee Relations Board (KPERB) had rejected the recommendation of its hearing officer. In remanding the case for further consideration by the full board the court stated:

"In apprising itself of the evidence, the deciding authority is not precluded from obtaining the aid of competent assistants who may sift and analyze the evidence. [Citation omitted.] Such a task is performed by the hearing officer under the board's procedures. [Citations omitted.]

"Because an administrative decision must be based on evidence and not conjecture, on those occasions when the deciding authority chooses not to adopt the findings and recommendations of its hearing officer, it must examine the record independently. [Citation omitted.] In the absence of evidence to the contrary, it will be presumed that the deciding officials have so considered the record. [Citation omitted.] Here, however, it appears that the three board members who considered the matter were not conversant with the record to the extent required of an informed decision. All three indicated in answers to interrogatories that they had read only 'portions' of the transcripts, and only one had read 'some' of the exhibits. The duty of the deciding officer to consider and appraise the evidence may on occasion be an onerous one, but its performance in a substantial manner is inseparable from the exercise of the authority conferred." p. 422.

See also *Clairborne v. Coffeyville Memorial Hospital,* 212 Kan. 315, 510 P.2d 1200 (1973).

Because administrative agencies are creatures of statute and

their power is dependent on statutes, they must find within the statute warrant for the exercise of any authority which they claim. 1 Am. Jur. 2d, Administrative Law § 70, p. 866. Thus, the particular statute involved in a given case is important.

*Coggins* construed K.S.A. 75-4323, which pertains to the Kansas Public Employee Relations Board. The KPERB was created for the purpose of preventing improper public employee practices and resolving impasses and disputes concerning employee organization and prohibited practices. It is required to make a record of its proceedings and

"Findings of the board as to the facts shall be conclusive unless it is made to appear to the court's satisfaction that the findings of fact are not supported by substantial evidence and *the record considered as a whole.*" (Emphasis added.) K.S.A. 75-4334(*b*).

The Public Employee Relations Board sits in review of public employer-employee matters as an administrative tribunal.

On the other hand, this case is governed by K.S.A. 72-5436, the Teacher Tenure Law. The making of a record is optional. Unlike cases involving the KPERB, there is no statutory requirement the record be considered before the final decision is made. K.S.A. 72-5443 requires only that the Board consider the hearing committee's recommendation. We construe this to mean the Board shall consider all of the information available from the hearing. If a record is made it shall be considered. However, consideration of the record does not mean all Board members are required to read the entire record. If the content of the record is available to the Board through staff, Board members or counsel, and is considered, due process is satisfied. The decision of whether to renew or terminate follows oral argument of counsel or submission of written briefs. We construed this statute in *Gillett v. U.S.D. No. 276*, 227 Kan. 71, 78, 605 P.2d 105 (1980), stating:

"The purpose of the due process hearing granted a teacher by statute is to develop the grounds that have induced the board to give the teacher notice of its desire to discontinue her services, and to afford the teacher an opportunity to test the good faith and sufficiency of the notice. The hearing must be fair and just, conducted in good faith, and dominated throughout by a sincere effort to ascertain whether good cause exists for the notice given."

See also *U.S.D. No. 461 v. Dice*, 228 Kan. 40.

A Board of Trustees of a junior college or school board has a dual role under our Teacher Tenure Law. The Board is the

employer who has served notice of nonrenewal on an employee. It has participated in the process of evaluation of the employee over a long period of time and has become convinced the employee should be terminated. The Board is an adverse party to the teacher at the due process hearing and is charged with the burden of proof of good cause to nonrenew. It has participated in carefully accumulating and preparing evidence for presentation to the hearing committee. It is acquainted with the facts prior to the hearing. It must then review its own action after the hearing. The legislature was aware of the Board's dual role when it enacted K.S.A. 72-5436 *et seq.* It provided the Board must consider the hearing panel's report and listen to argument or read the briefs and review its previous action in light thereof. According to the statute if the Board persists in its intention to nonrenew a teacher's contract, that decision is final if supported by substantial evidence. This procedure is clearly not controlled by *Coggins.* Here the Board was made acquainted with the record through Board discussion, staff briefing and argument of counsel and though all members had not read the entire record, there is sufficient evidence to show good faith. The Board's action was for good cause and supported by substantial evidence and therefore meets the requirements of statutory due process.

Appellants argue even if the Board's action meets the requirements of the Teacher Tenure Law it cannot withstand due process analysis under the constitution.

Application of constitutional due process protections requires the familiar two-step analysis. First, are the asserted individual interests encompassed within the protected interests of the 14th Amendment? If so, we must decide what procedures constitute "due process of law." *Ingraham v. Wright,* 430 U.S. 651, 672, 51 L.Ed.2d 711, 97 S.Ct. 1401 (1977).

First, it is clear a tenured teacher has an expectation of continued employment which qualifies for constitutional protection as a species of property. "The very purpose of tenure and continuing contract laws is to give recognition to a constitutionally protectible interest." *Endicott v. Van Petten,* 330 F. Supp. 878, 882 (D. Kan. 1971). See also *Board of Regents v. Roth,* 408 U.S. 564, 33 L.Ed.2d 548, 92 S.Ct. 2701 (1972); *Bogart v. Unified Sch. Dist. No. 298 of Lincoln Cty.,* 432 F. Supp. 895, 903 (D. Kan. 1977).

The next question logically follows: "What process is due a

tenured teacher?" In *Bogart* Judge Theis stated "procedural due process requires at least notice, a hearing, and a method of decision which does not offend the concept of fundamental fairness." 432 F. Supp. at 905.

" '[D]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. . . . Representing a profound attitude of fairness . . . 'due process' is compounded of history, reason, the past course of decisions . . . ." *Ingraham v. Wright,* 430 U.S. at 675.

" 'The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.' " *Goss v. Lopez,* 419 U.S. 565, 578, 42 L.Ed.2d 725, 95 S.Ct. 729 (1975).

"Determining what process is due in a given setting requires the Court to take into account the individual's stake in the decision at issue as well as the State's interest in a particular procedure for making it." *Hortonville Dist. v. Hortonville Ed. Assn.,* 426 U.S. 482, 494, 49 L.Ed.2d 1, 96 S.Ct. 2308 (1976). The test is specifically set out in *Mathews v. Eldridge,* 424 U.S. 319, 335, 47 L.Ed.2d 18, 96 S.Ct. 893 (1976):

"[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail."

The private interests affected here are tenured teachers' interests in continued employment. As previously noted, tenured teachers possess a property right protected by the 14th Amendment. Arguably the risk of erroneous deprivation of such interest increases when members of the decision-making board neither attend the hearing nor read the entire record there compiled. Here, however, that risk was lessened by part of the Board reading the record and participating in the discussion; by a detailed majority and minority report; and by oral argument of counsel to the Board prior to the making of a decision. Not only is the Board's decision required to be for good cause and supported by substantial evidence, but it must be made after the reconsideration of its intention to nonrenew the teachers' contracts in light of the hearing committee's recommendation, minority report and

argument of counsel. Finally, the government's interest is in providing a good educational system staffed by competent teachers. A good school is dependent upon the Board being able to terminate teachers who do not meet the standards set by the Board. The governmental interest is an important one. Under these circumstances we cannot say that the failure of all the decision-makers to read the entire record constitutes a deprivation of property without due process of law under the 14th Amendment.

Here, Veronica Kelly and Evelyn Cochran were afforded notice of a full and complete hearing where they cross-examined the Board witnesses and put on rebuttal evidence of their own before a hearing committee. Thereafter, Kelly and Cochran were given an opportunity to brief and argue their cause before the Board of Trustees. From this they received an adverse decision. We conclude the requirements of constitutional due process were met.

The judgment of the trial court is affirmed.