No. 61,965

MARCIA UNRUH, *Appellee,* v. BOARD OF EDUCATION, UNIFIED SCHOOL DISTRICT NO. 300, *Appellant.*

(775 P.2d 171)

Opinion filed May 26, 1989.

*Robert W. Christensen,* of Chapin & Penny, of Medicine Lodge, argued the cause and was on the brief for appellant.

*E. L. Lee Kinch,* of Ratner, Mattox, Ratner, Kinch & Brimer, P.A., of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This case involves the decision to nonrenew a contract of a tenured teacher. The Board of Education of Unified School District No. 300 (Board) appeals from the judgment of the district court reversing the Board's decision not to renew the teacher's employment contract and ordering that she be reinstated with back pay.

The facts in this case are not greatly disputed. In the fall of 1977, Marcia Unruh was employed by Comanche County Unified School District No. 300 as a learning disabilities teacher for the Ki-Com Special Services Cooperative. Her contract of employment had been renewed annually since the school year of 1977-78 through the school year of 1985-86, based upon the recommendations of the appropriate administrators in the sponsoring district and the district in which she taught.

Unruh holds a Bachelor of Science degree in elementary education from Wichita State University. This degree was granted in 1974. She also holds a Master's degree in learning disabilities from Emporia State University, which was granted in 1980.

On April 9, 1986, the Board notified Unruh of its intention not to renew her employment contract for the school year 1986-87, and of her right to request a hearing in accordance with the

provisions of K.S.A. 72-5436 *et seq.* The reasons given by the Board as grounds for nonrenewal were as follows:

Failure to obey reasonable rules promulgated by the Board and consistent below-expectation ratings in the following areas:

Instructional Procedures, Management Skills, and Professional Relationships.

In a letter dated April 14, 1986, Unruh requested a due process hearing and demanded that the Board state with particularity the specific actions that constituted the grounds for her nonrenewal. In response, a letter dated June 30, 1986, was written by Mary Ann Jones, who was the director of special education for U.S.D. No. 300 as well as the school psychologist. Enclosed with the letter was a four-page document setting out examples of Unruh's actions that the Board relied upon when it decided to not renew her contract. This document, referred to by both parties as the bill of particulars, was drafted by Jones and John Eppich, principal of the grade and high school at Mullinville, in response to Unruh's letter requesting specific reasons relied upon by the Board. Apparently, the Board gave Jones the responsibility of responding to Unruh's letter. The record contains no indication that any member of the Board reviewed the bill of particulars before it was provided to Unruh. In her letter of June 30, 1986, Jones also stated that Unruh's employment history would be introduced, stating: "A teacher's history is important to the Board of Education making the decision of whether to renew or non-renew a teachers [*sic*] contract."

The due process hearing committee conducted hearings on September 11, 12, and 13, and on November 14 and 15, 1986. Four witnesses testified on behalf of the Board; 15 witnesses testified on behalf of Unruh. Numerous exhibits were introduced into evidence.

In April of 1987, the committee made its determination. A majority found that the Board produced substantial evidence to support the reasons given for nonrenewal of Unruh's contract on the grounds that she failed to obey reasonable rules promulgated by the Board, and that she had consistent below-expectation ratings in management skills and professional relationships. One member of the three-person committee dissented on these points. The majority of the committee concluded that the reasons

given by the Board constituted good cause for not renewing Unruh's contract. Noting the evidence presented at the hearing by teacher's aides, parents, and even students, the committee unanimously concluded that the Board did not present substantial evidence to support the allegation that Unruh's conduct was consistently below expectation in instructional procedures.

On June 1, 1987, the Board considered the issue of the nonrenewal of Unruh's contract in light of the decision by the committee. Discussion took just 15 to 20 minutes, without the Board's going into executive session. The Board unanimously adopted a resolution, which the superintendent of U.S.D. No. 300 had prepared, that endorsed the findings and recommendations of the hearing committee and refused to renew the employment contract of Unruh. An alternate resolution to renew Unruh's contract had not been prepared by the superintendent. Unruh then appealed to the district court. The district court, in entering judgment in favor of Unruh, made findings of fact, including the following:

"7. None of the Board members attended the due process hearing, did not read or review the transcript of testimony or the exhibits, nor did they have the contents of the record made known to them by a staff summary of the evidence. A majority of the Board, moreover, neither read or reviewed the briefs filed by the parties nor did they read the decision of the hearing committee.

"8. Notwithstanding the undisputed fact that the Board members did not conduct a 'good faith review' of its previous tentative decision in light of the evidence produced at the hearing, the decision of non-renewal was adopted."

The court noted that, in making its final resolution, the Board acted solely upon the recommendations of the administrators without any attempt by the Board to make an independent review of the facts presented at the due process hearing. The court concluded that the Board failed to afford the teacher due process and thus acted in an arbitrary and capricious manner. The court further concluded that the reasons and basis claimed as good cause for nonrenewal of Unruh's contract were not supported by substantial evidence presented by the Board.

The district court ordered that Unruh be reinstated at the same classification and rank and with the same pay to which she would be presently entitled had her employment as a teacher been continued without interruption. Furthermore, it concluded that she was entitled to back pay consisting of her salary and fringe benefits.

The Board appeals the judgment of the district court, claiming that:

1. The district court erred in finding that the Board did not conduct a good faith review that satisfied the requirements of due process;

2. the district court erred in finding the decision of the Board was not supported by substantial evidence; and

3. the district court did not apply the appropriate standard of review in examining the decision of the Board.

We first address the issue of whether the Board's consideration of the decision to not renew the contract of Unruh was a good faith review that satisfied the requirements of due process.

The Kansas Legislature has enacted a comprehensive due process procedure to cover the termination or nonrenewal of a teacher's contract which applies to every school district, area vocational-technical school, and community junior college in the state. K.S.A. 72-5436 *et seq.* This court has recognized that the dismissal of teachers and the nonrenewal of their teaching contracts can be a complex, difficult process with serious implications. In *Million v. Board of Education*, 181 Kan. 230, 234, 310 P.2d 917 (1957), this court discussed the purpose in providing for tenure of school teachers:

"The evident purpose of the Tenure of Instructors Act is to protect competent and worthy instructors and other members of the teaching profession against unjust dismissal of any kind—political, religious or personal, and secure for them teaching conditions which will encourage their growth in the full practice of their profession, unharried by constant pressure and fear, but it does not confer special privileges upon them to retain permanently their positions or salary, nor permit their interference with the control or efficient operation of the public-school system; and, notwithstanding it grants tenure to those who have taught the requisite period, it nonetheless empowers Boards of Education to discharge them for just cause in an orderly manner by the procedures specified."

Although the court was discussing the Tenure of Instructors Act in *Million*, this court, in *Gillett v. U.S.D. No. 276*, 227 Kan. 71, 75-76, 605 P.2d 105 (1980), recognized that the same purpose explains the enactment of the current statutory scheme to provide due process for tenured teachers. In a case which involves the nonrenewal of a teaching contract, the court must consider the rights of the teacher, the rights of the school board, and the rights of the children to receive a quality education in a proper school atmosphere. Thus, the court is challenged "to provide a

decision, fair and equitable both to the teacher and to the school board, with a minimum amount of disruption of the educational opportunity for the children." 227 Kan. at 75. With that challenge in mind, we turn to the case at hand.

The current statute provides that once the decision of the hearing committee has been rendered in a written opinion, it is to be submitted to the teacher and the board. If the members of the hearing committee are not unanimous in their recommendation, then the board is required to "consider the opinion, hear oral arguments or receive written briefs from the teacher and a representative of the board, and decide whether the contract of the teacher shall be renewed or terminated." K.S.A. 72-5443(c). The decision of the board is final, subject to appeal to the district court pursuant to K.S.A. 1988 Supp. 60-2101.

The Board argues that the record indicates a good faith review of the hearing committee's recommendation occurred at the time the Board agreed upon its final resolution that Unruh's teaching contract would not be renewed. In *Kelly v. Kansas City, Kansas Community College,* 231 Kan. 751, 648 P.2d 225 (1982), this court noted the dual role the legislature placed upon a school board by the statutes defining the procedure to be followed to terminate or not renew a teaching contract. Before the decision is made, the board participates in evaluating the employee over a period of time until it becomes convinced the employee must be terminated. At the time of the due process hearing, the board is an adverse party to the teacher and is charged with presenting evidence of good cause to not renew. To this end, the board participates in carefully accumulating and preparing evidence to present to the hearing committee. 231 Kan. at 760.

Once the committee's decision is rendered, however, the board acts as a quasi-judicial body in reviewing its prior decision to not renew the contract. In striving for a high standard of detached objectivity, the board must "abandon its role as prosecutor after the due process hearing and make a good faith review of its previous tentative decision in light of the case presented to the hearing committee." *Haddock v. U.S.D. No. 462,* 233 Kan. 66, 78, 661 P.2d 368 (1983).

The Teacher Tenure Law does not mandate that a record be made of the due process hearing and, therefore, board members are not expected to read the entire transcript of such a hearing.

*Kelly*, 231 Kan. at 759. Although K.S.A. 72-5443, by its terms, specifies only that the board consider the hearing committee's recommendation, the board must consider all information available from the hearing. A record that exists *must* be considered, but "[i]f the content of the record is available to the Board through staff, Board members or counsel, and is considered, due process is satisfied." *Kelly*, 231 Kan. at 759. The Board in *Kelly* became acquainted with the record through Board discussion, staff briefing, and argument of counsel. Although all Board members had not read the entire record, the court found sufficient evidence to establish good faith in reviewing the record. The court ultimately concluded that the action of the Board was done for good cause and was supported by substantial evidence, which met the requirements of statutory due process. 231 Kan. at 760.

Here, as in *Kelly*, the members of the Board were deposed but, unlike *Kelly*, the parties did not stipulate the depositions into evidence. The Board opposed the efforts by Unruh to depose the members of the Board and, although not raising it as a separate issue in its brief, did so in oral argument. The Board points out that, in *Kelly*, this court held that, absent statutory authority, the Board is not subject to inquiry concerning its mental processes in reaching its decision, and contends that, by allowing the Board members to be deposed, the trial court permitted such an inquiry in this case. We do not agree.

In the present case, the trial court allowed the depositions, stating: "Inquiry directed to due process must be broad and Appellant is entitled to ascertain the actual basis for the Board's action by deposition. The mental process of the Board in arriving at its decision, however, is not subject to inquiry." We find that Unruh did follow the directive of the trial court. The questions asked centered around whether other reasons not given in the notice to the teacher were relied upon in deciding not to renew the contract and what documents were received and reviewed by the Board in making its final decision following the recommendation of the hearing committee. The questions concerning the documents that were actually reviewed runs close to the situation which occurred in *Kelly*, where this court held it was inappropriate and involved inquiry into their mental processes. Without such an inquiry, however, it is virtually impossible to

know if the board, like this one, relies upon nothing except a mere recommendation that the teacher be fired.

Further, in the present case, the Board's action, or lack of it, would reasonably lead an objective observer to question the fundamental fairness of the Board's decision to nonrenew Unruh's employment contract. The limited questioning which was permitted by the trial court and which occurred here was properly allowed in determining whether the minimum requirements of due process were met.

Although it is not incumbent upon the Board to read the record developed in its entirety, procedural due process requires that the decisionmaking be conducted in a manner that does not offend the basic concept of fundamental fairness. The United States Supreme Court, in *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976), noted three distinct factors that must be considered in identifying the specific dictates of due process:

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

The private interests here involve the teacher's property right in continued employment, which is protected by the due process clause of the Fourteenth Amendment. As noted in *Kelly,* the risk of erroneous deprivation of this interest increases when members of the decision-making Board do not attend a hearing and do not read the entire record compiled there. In *Kelly,* however, the court found that this risk was lessened because part of the Board read the record and participated in the discussion, because detailed majority and minority reports were given, and because oral argument was made by counsel to the Board prior to making its decision. 231 Kan. at 761.

Here, these safeguards were not utilized. No members of the Board read any of the record. Only a 15- to 20-minute discussion occurred at the Board meeting following receipt of the recommendation of the hearing committee. Because the decision of the hearing committee was not unanimous, the Board was required to "consider the opinion [of the committee], hear oral arguments or receive written briefs from the teacher and a representative of

the board, and decide whether the contract of the teacher shall be renewed or terminated." K.S.A. 72-5443(c). Oral argument was not presented to the Board by counsel; instead, apparently the written briefs of closing arguments filed with the committee were presented to the Board. Only one of the Board members testified in depositions that she recalled reading the brief submitted by Unruh. The other members could not recall whether they had read or received the brief. All indicated that they acted solely upon the recommendation of the administrators. None of the Board members indicated that he or she reviewed any portion of the transcript or record other than the hearing committee's recommendation and the briefs. No evidence indicates that a summary of the evidence presented at the committee hearing was ever made available to the Board members either orally or in writing. No executive session was utilized by the Board to review any of the evidence.

Counsel for the Board contends that the hearing committee report, briefs, and documents were submitted to the Board members for review, and simply because Board members could not remember having seen or read them was not conclusive evidence that they were not considered. Counsel credits this lack of memory to the large volume of reading material and documents the Board must consider and contends that it would be unreasonable to expect specific recollection some four months after the Board considered this matter. The record does not indicate the Board's workload during the time Unruh's contract was being considered. However, regardless of the workload, it is not unreasonable to expect that a Board member would at least be able to remember if he or she read a brief, report, or document.

The government interest in providing a good educational system staffed by competent teachers is important and depends upon the ability of a board to terminate teachers who do not meet its standards. While the government interest is important, it must be balanced against the need to provide procedural safeguards to protect against the erroneous deprivation of the tenured teacher's right to continued employment. In *Haddock*, we held that "[t]o obtain a fair and impartial decision requires a school board to strive for a high standard of objectivity when sitting as a quasi-judicial body and make a good faith review of its previous

tentative decision in light of the evidence adduced at the due process hearing." 233 Kan. 66, Syl. ¶ 9. Clearly that did not occur in the present case. The failure of the Board to, in essence, look beyond the recommendations of its administrators and the brief of its own attorney offends the basic concept of fundamental fairness and deprived this teacher of property without due process of law under the Fourteenth Amendment. The district court correctly concluded that the Board acted arbitrarily and capriciously, resulting in a denial of due process. By virtue of our holding on this issue, it is not necessary to consider the additional issues raised.

The judgment of the district court is affirmed.

HERD, J., not participating.