(813 P.2d 385)

No. 65,413

MARTHA J. LOEWEN, *Appellant,* v. BOARD OF EDUCATION, UNI-
FIED SCHOOL DISTRICT NO. 411, MARION COUNTY, KANSAS,
*Appellee.*

Opinion filed June 14, 1991.

E. L. *Lee Kinch*, of Post, Syrios & Kinch, of Wichita, for appellant.

*David G. Shriver*, of David G. Shriver Law Office, of McPherson, for appellee.

Before PIERRON, P.J., BRAZIL and LARSON, JJ.

LARSON, J.: Martha J. Loewen appeals the trial court's decision affirming the vote of the Board of Education of Unified School District No. 411, Marion County, Kansas, (Board) not to renew her teaching contract.

Loewen has taught kindergarten in the Goessel school system since 1967. Her teaching experience dates back to 1949, with a ten-year interruption devoted to her family. She enjoyed tenure and satisfactory evaluations until the 1986-87 school year.

In the fall of 1986, Goessel principal Perry McCabe became concerned about Loewen's teaching methods and her handling of a large kindergarten class. He was contacted by parents with similar concerns. After evaluations and critiques, McCabe decided Loewen was an ineffective teacher who required assistance because of her deficiencies in organization, discipline, variety of activities, and motivation.

In April of 1987, Superintendent Robert Van Arsdale and McCabe met with Loewen and informed her that her contract would be renewed but that she would be under an intensive assistance plan and required to submit to a physical and mental examination. The plan consisted of 32 objectives with numerous suggestions as to how each should be achieved.

Dr. Jeri Carroll, professor of elementary and early childhood education at Wichita State University, was hired in the fall of 1987 by agreement of the parties to observe and make recommendations to assist Loewen. Dr. Carroll made three announced visits and one unannounced visit. After the second and third visits, Dr. Carroll made specific recommendations to the administration and Loewen which were adopted into the plan of assistance in January of 1988.

In March of 1988, the Board decided not to renew Loewen's contract. Written notice of nonrenewal was served as required by K.S.A. 72-5437. The Board's decision was based on Loewen's failure to maintain the requirements of the assistance plan, her failure to implement Dr. Carroll's suggestions, and an attitude the Board perceived as uncooperative.

Pursuant to K.S.A. 1990 Supp. 72-5438, Loewen requested a due process hearing and a hearing committee was impaneled. Loewen also requested and was granted a more specific statement from the Board of the reasons for nonrenewal. The Board provided a document listing 22 areas in which Loewen was deficient.

A due process hearing was held on January 11, 12, and 13, 1989, with the majority of the hearing panel finding that Loewen should be reinstated because (1) a considered effort was made to build a case against her, (2) a shotgun approach was employed to support the nonrenewal, (3) the reasons given were insufficient, and (4) the Board failed to meet its burden of proof.

One member dissented, concluding the Board had not acted arbitrarily because (1) it had made an effort to work with Loewen, including hiring a consultant to observe and make suggestions, (2) the consultant considered Loewen "inconsistently adequate" and gave her a "D" in teaching, and (3) the witnesses upholding the Board's decision were more credible because they had spent more time in Loewen's classroom.

As required by K.S.A. 72-5443, the Board considered the opinions of the hearing panel and accepted briefs from both parties. In July 1989, the Board divided up the hearing panel transcripts and briefs for review. An executive session was held in early August; Board members; Superintendent Van Arsdale; McCabe, who was in the process of being replaced as the school's principal; the new principal, Chet Roberts; and the Board's attorney were

present. At the next regularly scheduled Board meeting on August 14, 1989, the Board voted unanimously to affirm its earlier decision to nonrenew Loewen's contract.

This action was communicated to Loewen by certified letter. She appealed to the district court. K.S.A. 72-5443 and 60-2101(d). Depositions of the Board members and administrators were taken, and a pretrial conference order was entered in February of 1990. In June of 1990, the trial court found that Loewen was not denied due process, that she had received a fair and impartial hearing, that evidence outside the record was not considered, and that substantial evidence existed to justify the nonrenewal. The decision nonrenewing Loewen's contract was affirmed.

Loewen appeals, arguing that she was denied due process and that the Board's decision was arbitrary and capricious and not supported by the evidence.

Our scope of review is set forth in *Butler v. U.S.D. No. 440*, 244 Kan. 458, 463-64, 769 P.2d 651 (1989), where Justice Herd summarized the duty of an appellate court in the following manner:

"K.S.A. 1988 Supp. 60-2101(d) gives the district court jurisdiction to review the Board's decision. The district court may not hear the case de novo, but is limited to deciding whether: (1) The Board's decision was within the scope of its authority; (2) its decision was substantially supported by the evidence, and (3) it did not act fraudulently, arbitrarily, or capriciously. In *Gillett v. U.S.D. No. 276*, 227 Kan. 71, 75, 605 P.2d 105 (1980), we held:

" 'In determining cases involving the dismissal or nonrenewal of a teaching contract, the courts are obligated to consider the rights of the teacher, the rights of the school board, and the rights of the school children to receive a quality education in a proper school atmosphere. In every such case, the challenge presented to the court is to provide a decision, fair and equitable both to the teacher and to the school board, with a minimum amount of disruption of the educational opportunity for the children.'

"We held in *Million v. Board of Education*, 181 Kan. 230, Syl. ¶ 1, 310 P.2d 917 (1957), that, while the Teacher Tenure Act protected tenured teachers from 'unjust dismissal of any kind—political, religious or personal,' it 'does not confer special privileges or immunities upon them to retain permanently their positions or salary, nor permit their interference with the control or efficient operation of the public-school system.'

"Where the district court's decision is appealed, we review the Board's decision as though the appeal has been made directly to us, and we are subject to the same limitations of review as the district court. *Kansas State*

*Board of Healing Arts v. Foote,* 200 Kan. 447, 451, 436 P.2d 828 (1968)."

See *O'Hair v. U.S.D. No. 300,* 15 Kan. App. 2d 52, 56-58, 805 P.2d 40 (1990).

Under our due process procedure for contract termination of teachers, K.S.A. 72-5436 *et seq.,* a nonrenewed tenured teacher has the right to a due process hearing before a three-person hearing committee with each party represented by counsel who may examine and cross-examine witnesses. The teacher has the specific right to testify and receive a fair and impartial decision based on substantial evidence. K.S.A. 72-5439.

If the hearing committee does not reach a unanimous decision, "the board shall consider the opinion, hear oral arguments or receive written briefs from the teacher and a representative of the board, and decide whether the contract of the teacher shall be renewed or terminated." K.S.A. 72-5443(c).

In *Gillett v. U.S.D. No. 276,* 227 Kan. 71, 77-78, 605 P.2d 105 (1980), Justice Prager opined:

"[T]he purpose of the due process hearing is to inquire into the reasons for the dismissal or nonrenewal of the teacher and to determine whether or not the evidence presented establishes good cause within the spirit and purpose of the teacher tenure statutes. . . .

"The purpose of the due process hearing granted a teacher by statute is to develop the grounds that have induced the board to give the teacher notice of its desire to discontinue her services, and to afford the teacher an opportunity to test the good faith and sufficiency of the notice. The hearing must be fair and just, conducted in good faith, and dominated throughout by a sincere effort to ascertain whether good cause exists for the notice given."

More often, as in this case, the allegations of due process violations come not from the hearing committee stage, but when the Board reconsiders its decision in light of a split decision by the hearing committee.

Loewen argues that the Board's conduct denied her due process in the following manner: (1) by relying on evidence outside the record; (2) by relying on reasons for nonrenewal not recorded in the Board's notice of nonrenewal; and (3) by inviting its superintendent and principal, who was the primary witness against the teacher to be present during the Board's deliberations. Loewen

further argues that certain board members were demonstratively biased against her.

It is clear that Loewen's last contention has no merit. Substantial evidence and the depositions of Board members reveal a thorough discussion of the hearing committee transcript and a conscious attempt to consider the ramifications of their decision on Loewen personally, the rights of the schoolchildren to receive a quality education with a minimum amount of disruption, and their own obligations.

Loewen's remaining contentions, however, must be discussed in detail.

Loewen relied heavily on language of *Haddock v. U.S.D. No. 462*, 233 Kan. 66, 661 P.2d 368 (1983), which is similar to our case. There, the school board voted to nonrenew Haddock's contract and Haddock requested a due process hearing. The hearing committee voted two to one to renew Haddock's contract. The board rejected the hearing committee's report. The trial court reversed the board, holding that the decision was not supported by substantial evidence and that Haddock's due process rights had been violated. The Supreme Court agreed that the procedure employed by the school board in *Haddock* violated due process.

In *Haddock*, three of the board members had conducted their own investigation into the facts. They interviewed witnesses and sampled public opinion about the case. A former board member presented a letter derogatory to Haddock, which was circulated among the current Board members. The Supreme Court found these actions to be a violation of due process and held: "Here, Mr. Haddock had no opportunity to hear the evidence gathered during the independent investigations or to cross-examine the secret witnesses to test their credibility. This procedure was fundamentally unfair. We hold the Board violated Mr. Haddock's right to due process." 233 Kan. at 77.

Justice Herd in *Haddock* recognized the difficult role of a school board and went on to state:

"We recognize a board of education has a dual role as both an administrator and a quasi-judicial body. Regardless of the inherent difficulty in the conflict of these roles, the teacher's entitlement to a 'fair and impartial decision' (K.S.A. 72-5439[f]), requires that the Board strive for a high standard of detached objectivity when performing its role as a quasi-judicial body. At-

tainment of this standard demands the Board abandon its role as prosecutor after the due process hearing and make a good faith review of its previous tentative decision in light of the case presented to the hearing committee. Accordingly, board members should refrain from discussing the case with any persons other than fellow board members and counsel from the date the hearing is completed until the Board renders its final decision." 233 Kan. at 77-78.

Here, the depositions of the Board members showed Loewen's situation was extensively discussed with patrons after the close of the due process hearings. The Board acknowledges these contacts but contends this is not a due process violation and in its brief suggests that Board members cannot live in a vacuum and ignore or refuse to listen to their patrons.

Several Board members who testified to outside discussions between the due process hearing and the time of the final decision by the Board all declined to identify the people they talked to and said they did not search out the comments but were contacted by constituents. Board member Lynel Unrau admitted that concerns relayed to him by patrons generally supported Dr. Carroll's report, but in response to his own counsel's questions, he stated:

"Q. What amount, if you can give an opinion, or a percentage of your decision would have been based on statements made by patrons received since the due process hearing?

"A. You're talking about in between the due process hearing and the August 14 decision?

"Q. Yes.

"A. *Oh, I would say thirty percent.*" (Emphasis added.)

Board member Dennis Flaming stated that he discussed Loewen's case with parents in the district after March 28, 1988, "[t]o try to get as much information as possible" and responded as follows to questioning:

"Q. It would seem to follow that inasmuch as you voted initially to nonrenew and finally to nonrenew, that you relied on these conversations that you had with the parents in the community and patrons in the community concerning the accuracy of the reasons for nonrenewal; fair statement?

"A. That is a fair statement.

"Q. You indicated that other board members had shared with you similar experiences in executive sessions?

"A. Similar experiences."

Board member Diana Schmidt testified that although parents and patrons came to her with concerns, generally negative toward Loewen, and that she relied on these visits to verify reasons for nonrenewal, this information did not affect her final decision.

Board member Juanita Stone testified that she continued to receive input from parents after the due process hearing although she indicated receipt of comments favorable to Loewen. She testified that she talked with a teacher who attended the due process hearings who "could not believe that the decision had gone the way it did."

Board members stated they were not a rubber stamp board, received no direct recommendations from their superintendent and principal, and often did not follow the superintendent's recommendations when received.

This testimony cannot counteract or balance the clear existence of facts which are directly contrary to and in violation of the Supreme Court's clear prohibition in *Haddock,* where it was stated: "A teacher whose contract is being nonrenewed is entitled to be judged solely on the reasons enunciated in the notice of nonrenewal. Due process requires no less." 233 Kan. at 78.

The reasons that such conduct is violative of due process is that the teacher has "no opportunity to hear the evidence gathered during the independent investigations or to cross-examine the secret witnesses to test their credibility." 233 Kan. at 77.

Although some members testified the statements of the unknown parents and patrons were not relied upon, others say these items were discussed during the executive session. This violation is not negated by the fact that the Board did not initiate the conversations as did the *Haddock* board. It may be difficult for an electorate to understand why board members will not discuss school business with them, but in order to maintain the required "high standard of detached objectivity" when performing a quasi-judicial role, board members must inform school patrons their position precludes any direct discussion of a nonrenewal controversy once the due process hearing is held.

Loewen further contends the presence of the superintendent and the principal during the Board's deliberations violated her right to due process. There were actually three administrators

present rather than the two she complains of, because former principal McCabe as well as new principal Roberts were in the executive session in addition to Superintendent Van Arsdale.

Our Kansas Supreme Court held in *Kelly v. Kansas City, Kansas Community College*, 231 Kan. 751, 760, 648 P.2d 225 (1982), that the school board being "made acquainted with the record through Board discussion, *staff briefing* and argument of counsel" (emphasis added) was not a due process violation. We followed *Kelly* in *O'Hair v. U.S.D. No. 300*, 15 Kan. App. 2d 52, 805 P.2d 40 (1990), wherein we stated:

"We believe that the better procedure might be to require the absence of the superintendent once such questions as the Board might have were answered, but we are not prepared to hold that his presence during the executive session where the hearing committee's opinion, the record, and the evidence were considered amounted to a due process violation requiring reversal of the Board's actions." 15 Kan. App. 2d at 65.

The Board contends that because testimony indicated the Board made an independent decision and neither Van Arsdale nor McCabe were asked for their opinions, their presence had no effect on due process. We do not agree. McCabe was not only Loewen's immediate supervisor and chief witness against her, his status as principal had either changed or was in the process of changing. The new principal, Roberts, had no connection with or justification to be in the executive session. Neither McCabe nor Roberts could properly contribute to the Board's discussion. McCabe's opportunity to testify ceased at the end of the due process hearing and his very presence raises questions about the proceedings.

When acting as a quasi-judicial body, the Board is not empowered to gather additional information beyond that presented to the hearing committee. It must comport with the requirements of due process, and McCabe's and Roberts' presence severely damage the elements of "fundamental fairness" or "detached objectivity" that the Board had the obligation to establish. See *Haddock*, 233 Kan. at 77-78; *Bogart v. Unified Sch. Dist. No. 298 of Lincoln Cty*, 432 F. Supp. 895, 905 (D. Kan. 1977).

Colorado addressed this issue in *deKoevend v. Bd. of Educ. of West End School*, 688 P.2d 219 (Colo. 1984), where the Colorado Supreme Court concluded that the teacher's right to due

process was violated when the school board, in retiring to consider the hearing officer's findings and recommendations, permitted the school superintendent and principal to be present during its deliberations. The court stated:

"The school superintendent initiated the charges in this case and testified to the complaints he received about deKoevend's conduct and deKoevend's failure to follow directions relating to his teaching responsibilities. The principal gave detailed testimony about each of the respective charges brought against deKoevend. It is undisputed that both witnesses had a substantial interest in the outcome of the board's deliberations. Although the record does not show that these witnesses actually contributed to the final decision of the board, their presence during the board's deliberative session, at the very least, was such as to substantially undermine the appearance of impartiality in connection with the board's statutory review of the hearing officer's findings and recommendation and, under the particular circumstances of this case, was sufficient to overcome the presumption of regularity attendant to an administrative proceeding." 688 P.2d at 228.

In *Occhipinti v. Bd. of S. Dirs., Old Forge S.D.*, 48 Pa. Commw. 56, 408 A.2d 1189 (1979), the nonrenewed teacher complained that the superintendent who testified against her was present for the school board's deliberations. The court, quoting *Department of Education v. Oxford Schools*, 24 Pa. Commw. 421, 356 A.2d 857 (1976), held that the superintendent, "[h]aving chosen to wear the hat of an adverse witness, . . . cannot then don the hat of a nonvoting Board member even though otherwise entitled to do so. We cannot allow such an elevation of form over substance, regardless of the good faith or integrity of those involved." 48 Pa. Commw. at 59.

Not all jurisdictions have held, as has Kansas, that allowing a superintendent to be present during school board deliberations is not a due process violation; however, the reasoning of both the Colorado and Pennsylvania cases applies more strongly to the presence of a previous, existing, or future principal. Our court's opinion in *O'Hair*, 15 Kan. App. 2d at 65, although suggesting a superintendent should vacate the executive session once the required briefings were concluded, will not be extended to allow the presence of antagonistic or unnecessary parties to the executive session. Not only is such presence questionable under our open meetings concept, it smacks of unfairness to the teacher whose rights are being considered.

Finally, Loewen complains the Board relied on reasons for nonrenewal not recorded in the Board's notice for nonrenewal, which were expanded greatly by the more specific statement requested by Loewen and furnished by the Board. Based on the Board's decision, we cannot tell whether this allegation has merit.

The motion submitted, seconded, and carried at the Board's August 14, 1989, meeting reads as follows:

"After a review by the Board of Education U.S.D. 411 of the hearing panel's majority and dissenting opinions, the three volumes of testimony, and the briefs submitted to the Board of Education by the teacher and the Board's representative, I move that the Board of Education U.S.D. 411 affirm the decision of March 29, 1988, for termination of the teaching contract of Martha Loewen."

K.S.A. 72-5443(c) requires only that the Board "decide whether the contract of the teacher shall be renewed or terminated." In *Gillett v. U.S.D. No. 276*, 227 Kan. 71, 605 P.2d 105 (1980), the teacher vigorously objected to the failure of the school board to make specific findings of fact and conclusions of law to justify the overruling of the hearing committee's recommendations. The *Gillett* court held:

"We believe that the better procedure in all school termination cases is for a school board to either adopt the findings of the hearing committee or, if it cannot accept them, to make its own findings of fact so that the propriety of its action may be more easily determined upon review in district court. In the present case, however, the controlling facts are undisputed and we cannot find that the teacher involved here was in any way prejudiced by the failure of the school board to make specific findings of fact in rejecting the recommendation of the hearing committee." 227 Kan. at 80.

Our facts are materially different from *Gillett*. The facts there were undisputed while practically every material fact in this case *is* disputed. We may surmise that the Board rejected the testimony of Loewen and her witnesses in favor of the evidence given by McCabe, Carroll, and numerous other witnesses who pointed out Loewen's lack of teaching attributes, but there is nothing in the record which compels us to so find.

Loewen raises the following as an issue for our consideration: "Was the decision of the Board of Education nonrenewing the employment contract of Martha Loewen supported by substantial evidence?"

In her brief she cites the quote from *Gillett* set forth previously herein but makes no lack of substantial evidence argument in claiming the decision is incompatible with due process. A detailed review of the record indicates that if certain witnesses are deemed more credible, the highly conflicting nature of the testimony could justify the decision of either the majority members or the dissenting member of the hearing panel as well as the conclusion of the Board.

It is ironic that while K.S.A. 72-5443 requires the hearing committee to set forth its findings of fact in its written recommendation, the board is not specifically required to do so. Although findings of fact were not compelled in *Gillett* because of undisputed controlling facts, the basis for requiring findings of fact in cases such as this one is established.

In *Gillett*, 227 Kan. at 80, Justice Prager stated:

"We agree that specific findings of fact may be indispensable in some cases for a reviewing court to determine whether there was substantial evidence to support an administrative agency's order. In *Cities Service Gas Co. v. State Corporation Commission*, 201 Kan. 223, 440 P.2d 660 (1968), this court noted that although no method of insuring against arbitrary action by an administrative agency has yet been found, the nearest approach is to require that findings of fact be made. When a conclusion must be buttressed by findings of fact for which there is supporting evidence, it becomes more difficult to conceal arbitrary action."

The existence of evidence, if believed by the finders of fact, showing Loewen to be an inadequate teacher and our obligation to consider "the right of school children to receive a quality education in a proper school atmosphere" requires that this case be remanded for a factual determination; we point out that a factual basis also exists which would compel Loewen's reinstatement. By our decision herein we express no opinion as to which factual finding should be made.

We hold that when the controlling facts are disputed, as here, meaningful review cannot be made of a school board's decision without it either adopting the findings of the hearing committee or making its own specific findings upon which its conclusion is deemed to be justified.

We will not possibly jeopardize the educational opportunities of the schoolchildren and order reinstatement as Loewen claims

*Bogart,* 423 F. Supp. 895, and *Coats v. U.S.D. No. 353,* 233 Kan. 394, 662 P.2d 1279 (1983), requires. Neither of those cases had a valid factual issue of the teacher's ability to competently provide educational opportunities as exists herein.

Nor is reinstatement required as in the recent decision of *Unruh v. U.S.D. No. 300,* 245 Kan. 35, 37, 775 P.2d 171 (1989), because there the reasons for nonrenewal were not supported by substantial evidence presented to the school board. In the present case, the trial judge concluded that the Board's decision not to renew *was* supported by substantial evidence.

Because of the procedural due process violations set forth herein, the decision of the trial court is reversed.

This matter is remanded to the trial court with instructions that it remand the case to the Board for due process considerations in accordance with this opinion. The Board is directed to make findings of fact upon which its decision is deemed to be justified. The trial court is also directed to determine Loewen's damages resulting from the procedural due process violations set forth herein.