NOT DESIGNATED FOR PUBLICATION

No. 124,304

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JERRY L. PENNER SR.,
*Appellant*,

v.

CITY OF TOPEKA,
*Appellee*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; TERESA L. WATSON, judge. Opinion filed August 19, 2022.
Affirmed.

*Eric Kjorlie*, of Topeka, for appellant.

*Shelly Starr*, chief of litigation, City of Topeka, for appellee.

Before ARNOLD-BURGER, C.J., MALONE and COBLE, JJ.


PER CURIAM: Jerry L. Penner Sr. owned a vacant house in Topeka that caught fire and partially burned. After an inspection by the City of Topeka's property maintenance unit (City) revealed property damage from not only the fire but apparent disrepair, the City filed an unsafe structure complaint. Over the next few years, multiple administrative hearings were held to address Penner's planned rehabilitation of the home, including several hearings that were rescheduled due to the COVID-19 pandemic. Ultimately, the administrative hearing officer ordered Penner to demolish the house at a hearing where Penner failed to appear. On appeal, Penner argues the administrative hearing officer's decision was not supported by substantial evidence and violated his due process rights

1

because he was not given an opportunity to be heard on the progress he made on rehabilitating the home. Penner ignores the applicable standard of review and provides no authority to support his conclusory arguments of a due process violation. We find the administrative hearing officer's decision was supported by substantial evidence and did not violate Penner's due process rights because Penner was afforded many opportunities to be heard prior to the demolition order.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2018, a vacant residential property in Topeka owned by Penner caught fire. Although the fire was extinguished, the back area of the house, including the kitchen, was destroyed by the fire. A City inspector visited the property a day after the fire and noted the rest of the home revealed "dilapidated conditions unrelated to the fire, with a gutted interior, holes in the roof, and a missing window in the front." A few months later, the City code official filed a complaint alleging the property did not meet the minimum standards under the 2012 International Property Maintenance Code (the Code), which was adopted by the City. The City scheduled a hearing with an administrative hearing officer. The complaint contained eight specific improvements necessary for Penner to bring the property into compliance with the Code. The complaint also included a list of items Penner was to bring to the hearing to demonstrate his intent to repair the structure, including proof of his financial capabilities, a timetable for completion of repairs, and any other information that might be helpful, such as contacts with other inspectors, entities, or contractors.

Penner appeared at the first administrative hearing on August 1, 2018. After considering the evidence of the parties, the administrative hearing officer found the home was unfit for human use or habitation and did not meet the minimum code standards adopted by the City. The hearing officer granted Penner's request for continuance because Penner said he intended to rehabilitate the home but provided no plans or timeline. The

2

hearing officer ordered Penner to provide a timeline at the next hearing. The order stated: "Failure of the owner(s) to appear will result in the [hearing officer] finding the owner(s) in default and issuing an order requiring the owner(s) to demolish and remove the structure within thirty (30) days of the date on the certification of service."

Following the first hearing, Penner appeared before the administrative hearing officer 9 times during 10 hearings held from August 2018 to February 2020. Before each hearing date, a City inspector would visit the property to take photos to show any work done on the home, and the code official would present the photos to the hearing officer at the next hearing.

The hearing officer continued the hearings held in September 2018 and October 2018 to permit Penner time to receive bids and create his rehabilitation timeline. Photos taken by the City inspector showed that by December 17, 2018, Penner had begun removing the fire-damaged former kitchen addition on the rear of the home. At the hearing in February 2019, Penner said he was making repairs to the home to comply with the Code and the hearing officer continued the hearing. But photos taken by the City inspector showed that, by February and April 2019, Penner had not made any additional progress.

The hearing officer granted Penner a "last continuance" at the April 2019 hearing but continued the matter again when the parties appeared at the July 2019 hearing. By July 2019, although the original part of the home was still boarded up, it appeared some repairs were occurring.

At the October 2019 hearing, the City code official submitted more documents and photographs into evidence, but it appears Penner presented no evidence. Photos showed that Penner had replaced the fire-damaged kitchen area as well as some new windows and roof repair. This led the City inspector to conclude that the exterior remodel was "pretty

3

much completed" although boarded windows remained on the front of the house, and what would be a rear entrance in the new addition also remained boarded. The October 2019 hearing order specified Penner needed to "[b]ring evidence of any progress" to the next hearing.

The hearing order for the January 2020 hearing stated Penner failed to appear, and the hearing officer again continued the case and required Penner to "[b]ring photos" to the next hearing. Penner appeared at the next hearing in February 2020, apparently without photos, and suggested he was still making repairs to the home. The hearing officer ordered Penner to "call [the] Code Inspector if interior work makes any progress or bring photos . . . of [his] progress" to the next hearing. The City code official submitted photos in January and February 2020 that showed "no additional work had been done on the rear of the house as time went on" and on the front side of the house "there were still boarded windows."

The City rescheduled Penner's next hearing to May 13, 2020, because of an emergency public health order that closed all City buildings. The hearing notice stated: "If for any reason you must miss your hearing, please call immediately. Missed hearings due to extenuating circumstances may be rescheduled at the discretion of the Administrative Hearing Officer. If you have any questions or concerns, please call our office." The notice also included a phone number for contacting the property maintenance code division, the agency handling the complaint against Penner's property. The City rescheduled the hearing three more times based on the Emergency Public Health Order, and each order similarly specified to "call immediately" if Penner needed to reschedule the hearing.

The City ultimately scheduled the hearing for September 9, 2020. During a later evidentiary hearing at the district court, Larry Johnson, a City of Topeka certified property maintenance inspector and the code official for Penner's property, testified the

4

City gave Penner notice of the administrative hearing by first class mail before the hearing at the same address where he received previous notices. Johnson also testified that he called Penner the day before the hearing, as he customarily does before any hearing, "to make sure [individuals are] aware of the hearing and hadn't forgotten it." Johnson left Penner a voice message reminding him about the hearing. Penner called him back the next day—the day of the hearing—and told Johnson that he would not attend because "he was afraid of the exposure of Coronavirus." Penner did not request a continuance.

Penner failed to appear at the hearing. Photographs taken by the City inspector in September 2020 showed no other progress on the property. The house "did not have a kitchen, or a bathroom, cooking facilities, or heating facilities, or hot water facilities." Based on the documents and photographs admitted into evidence by the City code official, the hearing officer found the home was "so deteriorated or dilapidated or has become so out of repair as to be dangerous, unsafe, unsanitary or otherwise unfit for human habitation or occupancy." Under the Code adopted by the City, a structure is "unreasonable to repair" if the repair costs exceed 30 percent of the replacement value. And because the code official estimated the cost of the rehabilitation of Penner's home at $55,951.48—well over 30 percent of the replacement cost of $112,510—the hearing officer ordered Penner to "remove or demolish the [h]ouse" within 30 days.

Penner timely appealed the administrative hearing officer's decision to the Shawnee County District Court under K.S.A. 60-2101(d). He argued "it would be just and equitable to permit him to file additional pleadings and to file pertinent additional evidence in support of his pray[er] for relief of requiring the City of Topeka to allow him additional time for him to complete his property renovations" by staying the hearing officer's demolition order.

5

Months earlier, our Supreme Court issued Kansas Supreme Court Administrative Order 2020-PR-58, effective May 27, 2020, and then extended it by Kansas Supreme Court Administrative Order 2021-PR-001, effective January 8, 2021. These administrative orders suspended all "statutes of limitation and statutory time standards or deadlines applying to the conduct or processing of judicial proceedings." Order 2020-PR-58, at 2. Although the order suspended such deadlines, it also permitted district courts to exempt cases from such suspensions. Order 2020-PR-58, at 2.

The district court filed a journal entry indicating Penner's appeal was exempt from the suspension of deadlines. The order stated:

> "After consultation with the parties and review of the file, this Court enters an order of exemption to avoid further delay, and imposes a deadline of February 11, 2021, for Penner to file responses to discovery currently pending. Further, as of the date of this order, this matter is no longer subject to the suspension of time in the Supreme Court's order."

The district court scheduled a videoconference evidentiary hearing on Penner's appeal for March 2, 2021. Penner appeared for the hearing. During the hearing, Penner testified he did not receive notice of the rescheduling of the administrative hearing for September 9, 2020. The district court did not find his testimony to be credible, particularly considering Johnson's testimony on his call to and from Penner.

The district court ultimately affirmed the administrative hearing officer's demolition order finding that Penner failed to make the necessary repairs to the home in the three years since the fire, and his dispute simply centered on his "desire to have more time to complete repairs." The district court found:  "Based on the evidence presented, . . . the hearing officer's order was within the scope of his authority, was supported by substantial evidence, and was not fraudulent, arbitrary, or capricious."

6

Penner moved to alter or amend the district court's decision, arguing that the City had violated his due process rights because, due to COVID-19 infection rates, he could not attend the hearing where the administrative hearing officer ordered demolition and there was no procedure in place to request a continuance of the administrative hearing. The district court denied this motion under both K.S.A. 60-259 and K.S.A. 60-260.

Penner appeals.

ANALYSIS

Penner's overarching request is for this court to grant a continuance or remand the case for an administrative hearing so that he might get the chance to present evidence on the amount of rehabilitation he had completed on the home. He claims that "both his procedural and substantive due process rights" afford him a reasonable opportunity "to present his evidence and be heard on the merits of the case and not by default." Much of Penner's argument is difficult to comprehend, but it seems he presents two discernable issues on appeal.

Penner's first declared issue is his claim that there was no procedure available by which a citizen could request a continuance of the administrative hearing—especially considering the COVID-19 pandemic—which denied him due process. In his second issue, Penner maintains the administrative hearing officer did not permit him the opportunity to present evidence of his home rehabilitation. But he does not benefit this court with a separate analysis for this issue. Rather, Penner simply "adopts and incorporates his Memorandum of Issue I . . . in full." Given the lack of distinct analysis, we will combine the issues for review.

Penner limits our ability to address his claim because he does not properly frame his claim within the scope of appellate review. Penner cites standards of review for a

7

district court's denial of a continuance and references the trial court's ability to grant a new trial—neither of which applies here. Penner briefly reviews due process standards, but he does not apply these standards to explain how the City violated his due process rights. Penner simply claims the City did not give him a chance to be heard.

*Appropriate standard of review*

We must first address both this court's and the district court's task under K.S.A. 60-2101(d), which confers jurisdiction on a district court to review the action of a political subdivision exercising "judicial or quasi-judicial functions." When a petitioner appeals under this statute, as Penner did, the district court is limited to reviewing the political subdivision's decision under a tripartite standard: whether the decision fell within the scope of the subdivision's authority; whether the decision was supported by substantial evidence; or whether it was fraudulent, arbitrary, or capricious. *Robinson v. City of Wichita Employees' Retirement Bd. of Trustees*, 291 Kan. 266, 270, 241 P.3d 15 (2010). On appeal from the district court, this court reviews the decision as though Penner filed his initial appeal directly with us. See 291 Kan. at 270; *Butler v. U.S.D. No. 440*, 244 Kan. 458, 464, 769 P.2d 651 (1989).

While Penner did not make a clear argument to the district court or this court under this threefold standard, he has not argued that the administrative hearing officer acted outside his scope of authority. He has also not claimed the hearing officer's decision was somehow fraudulent, arbitrary, or capricious. Because Penner provides no argument on these points, any argument on the topics is abandoned. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018) (holding that an issue not adequately briefed is waived or abandoned); *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017) (holding that a point raised incidentally in a brief and not argued is considered waived or abandoned).

8

Penner's argument may be construed to challenge whether the City's demolition order was supported by substantial evidence. He claims "the [r]ecord cannot substantiate certain findings of the [t]rial [c]ourt concerning [his] rights to a continuance to have the opportunity to present evidence to the City of Topeka's [hearing officer] in a meaningful way" because of his "legitimate safety concerns" during the pandemic. Any such evidentiary argument fails.

There are no true disputes over the facts here. The City's property maintenance code division produced photographs of the subject property taken on multiple dates, from March 2018 through September 2020, which the code official submitted as evidence without objection by Penner. These photos highlighted the dilapidated condition of the property, the repairs Penner did complete, and how the property remained deficient under the Code at the time of the September 2020 hearing. As noted by the City, despite making some repairs, Penner does not challenge he did not make the necessary renovations to bring the house into compliance within the time preceding the September 2020 hearing. And though the home still lacked necessities required for occupancy under the Code, such as a kitchen sink, Penner testified he was not seeking to rent the house at that time and his planned repairs were complete. While he testified that he "replaced all the fire damage," he did not seek to address the other deficiencies found in the home.

Along with photos, the code division submitted its appraisal information and its renovation cost estimator showing the costs of repair to the property which would bring it into code compliance as an occupiable structure. This estimate explained the necessary repair costs significantly exceeded 30 percent of the value of the structure—the threshold permitted under the Code.

But during the two and one-half years from the date of the fire to the final administrative hearing, though the City gave Penner multiple opportunities to present evidence of the progress he made toward rehabbing the property, he failed to do so. This

9

fact undercuts both his argument regarding a lack of substantial evidence and his due process argument. As early as the initial complaint in June 2018, the City directed Penner to bring information to the hearing to prove up his rehabilitation plan. Despite the hearing officer's repeated instructions to Penner to bring evidence of his progress on the property, the record reflects he never produced any evidence to the hearing officer throughout the administrative proceedings.

Then, on his appeal, the district court set a date for an evidentiary hearing which gave Penner almost two months to submit any exhibits in support of his position. Yet the only exhibits admitted by Penner to the district court were copies of the Supreme Court's Administrative Order 2021-PR-009, the hearing officer's final hearing order, and his discovery responses. Although he sought to offer some photos into evidence during the district court evidentiary hearing, Penner was not able to properly authenticate the photos. As a result, they were not considered by the hearing officer. In addition, he did not submit any financial information to rebut the City's appraisal or estimated renovation costs. Penner even admitted in his testimony to the district court he did not find it necessary to provide any evidence to the hearing officer about his costs of repair. And it is worth noting Penner does not argue the City code division's photographs inaccurately depicted the state of the structure.

"'Substantial evidence is "evidence which possesses both relevance and substance, and which furnishes a substantial basis of fact from which the issues can be reasonably resolved."'" *Davenport Pasture, LP v. Morris County Board of Comm'rs*, 31 Kan. App. 2d 217, 223, 62 P.3d 699 (2003). Upon our independent review of the relevant evidence in the record produced by the code enforcement division, we find the evidence presented was more than adequate to support the hearing officer's decision.

10

*Penner was not denied due process.*

Penner's primary challenge to the administrative hearing officer's order and district court findings is his due process argument. He seems to be arguing that without a mechanism to request a continuance, the code violates due process standards. In his brief on appeal, Penner argues: "The question to be posited is if discretionary on the part of the Administrative Hearing Officer, as whether or not to grant a continuance, where is the due process protection for a citizen?"

Penner neither specifies to which code he refers, nor makes a proper argument on why the lack of such method within the "Agency's Code" violates due process standards. Although we could assume from the context of the issue that he references the 2012 International Property Maintenance Code adopted by the City, it is not incumbent on this court to supply his arguments or connections. The lack of clarity in Penner's argument, and his failure to properly support and address the argument, is fatal to a claim of whether the Code itself violates due process standards. See *Russell*, 306 Kan. at 1089 (holding that a point raised incidentally in a brief and not argued therein is inadequately briefed and thus waived and abandoned); see also *In re Adoption of T.M.M.H.*, 307 Kan. 902, Syl. ¶ 6, 416 P.3d 999 (2018) (holding that a point raised without pertinent authority or without analysis explaining why it is sound despite a lack of supporting authority is inadequately briefed and thus waived or abandoned).

Having disposed of Penner's due process challenge to the "Agency's Code," Penner's remaining argument, interpreted broadly, contends that the City violated his due process rights when the hearing officer did not give him a chance to present evidence of the home's rehabilitation. Although Penner claims the City violated his procedural and substantive due process rights, his argument focuses only on the procedural rights.

11

The basic elements of procedural due process are notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Winston v. Kansas Dept. of SRS*, 274 Kan. 396, 409, 49 P.3d 1274 (2002). The first determination a court must make when reviewing a procedural due process claim is whether a protected liberty or property interest is involved. It is only when a court finds a protected interest is implicated that it must then determine the nature and extent of the process that is due. 274 Kan. at 409.

Penner does not benefit this court with an argument contending a protected liberty or property interest is involved, but Kansas courts have found due process claims to be within the scope of an appeal under K.S.A. 60-2101(d). See *Unruh v. U.S.D. No. 300*, 245 Kan. 35, 43, 775 P.2d 171 (1989) (upholding district court's conclusion the Board of Education acted arbitrarily and capriciously, resulting in denial of due process); see also *Haddock v. U.S.D. No. 460*, 233 Kan. 66, 69, 77-78, 661 P.2d 368 (1983) (affirming district court's conclusion the Board of Education's decision was not supported by substantial competent evidence and the board had denied teacher's right to due process). But even assuming a protected interest is involved, Penner's claim is unpersuasive because the City gave him notice and it provided many opportunities for him to be heard in a meaningful time and manner.

Penner's argument is unpersuasive, primarily, because the City gave him at least 10 opportunities to appear before the hearing officer and present evidence of the rehabilitation of the home before the order of demolition. In fact, the hearing officer ordered him to present such evidence on at least three occasions. At the October 23, 2019 hearing—which occurred 19 months after the home caught fire—the hearing officer ordered Penner to "[b]ring evidence of any progress" at the next scheduled hearing. At the next hearing on January 22, 2020, the hearing officer ordered Penner to "[b]ring photos" to the next scheduled hearing. At that hearing on February 19, 2020, the hearing officer ordered Penner to "call [the] code inspector if interior work makes any progress or bring photos . . . of progress." Penner complied with none of these orders.

12

Penner's next and final hearing occurred seven months later, but Penner neither appeared nor provided the required evidence that the hearing officer ordered. It was at this hearing that the administrative officer ordered demolition of the home. While his argument remains unclear, a broad interpretation of Penner's contention suggests that he believes he should have been granted another continuance to present evidence at this hearing due to the COVID-19 pandemic.

In any event, Penner's argument is unpersuasive because the notices of administrative hearing that Penner received conveyed Penner *could* request a continuance. Although the City rescheduled Penner's final hearing four times, each notice included language informing him that hearings "may be rescheduled at the discretion of the Administrative Hearing Officer" and to call the office with questions or concerns. The notice also included a phone number for contacting the Property Maintenance Code Division.

Despite the language of the notices, Penner did not call to request a continuance of the September 9, 2020 hearing. At the evidentiary hearing before the district court, the maintenance inspector and code official for Penner's property, Johnson, testified the City gave Penner notice of the administrative hearing by first class mail before the hearing. Johnson also testified that he called Penner the day before the hearing, as he customarily does, to ensure Penner remembered. Penner called him back the next day—the day of the hearing—and simply told Johnson that he would not attend the hearing because "he was afraid of the exposure of Coronavirus."

Penner, conversely, testified before the district court that he could not present the evidence of home rehabilitation because he "didn't even know there was a hearing scheduled for that . . . time." But in its order affirming the administrative order, the district court explicitly stated it did not believe Penner's testimony was credible. The court found:

13

"Penner testified that he was not aware of the September 9, 2020, hearing. The Court does not credit his testimony. The notice of hearing was sent to the same post office box as all prior correspondence, including multiple notices of other hearings where he later personally appeared. Further, he returned a call from Johnson the day before reminding him of the hearing. Penner told Johnson he would not attend because of COVID-19, but he did not contact the hearing officer to obtain a continuance or make other arrangements. There is no due process violation here."

A review of the record supports the district court's conclusion. While Penner claims he did not know about the hearing, other evidence supports the district court's conclusion that Penner was aware but failed to appear. The evidence similarly supports the conclusion that Penner did not request a continuance before failing to appear.

The City notified Penner of the date of the hearing, and it notified him of his ability to call for a continuance of the hearing. Even so, Penner did not seek a continuance and he merely informed the code inspector—the day of the hearing—that he did not intend to appear. Put simply, Penner is arguing the hearing officer violated his due process rights because the officer failed to provide him a continuance that he did not request. This is not persuasive.

And given the facts, the district court did not err in finding that the City did not violate Penner's due process rights because it gave him multiple opportunities to be heard. Penner had a chance to present evidence of the home's rehabilitation at the final administrative hearing in September 2020, but he also had multiple occasions to be heard at the many prior hearings that the hearing officer continued because Penner did not present the evidence requested by the hearing officer.

We consider any remaining arguments outside his claim of due process as waived or abandoned by Penner because they were either raised incidentally or not properly briefed. See *In re Williams*, 307 Kan. at 977; *Russell*, 306 Kan. at 1089. For example, in

14

his brief Penner argues this court should find the administrative code requires a "good cause standard for review to provide a minimal standard to permit an opportunity [Show Cause Protection] for a citizen to request a continuance . . . ." Yet Penner provides no explanation or authority to support his statement that a "good cause standard" should be required.

In sum, Penner has not presented this court with a claim that shows his due process rights were violated when he failed to appear before the hearing officer after the City provided him with notice of the hearing. Penner had many chances to be heard, yet he presented no evidence. The City gave him instructions on how to seek a continuance under the notices it provided him, but he did not request any continuances. An agency need not continue a matter into perpetuity to accommodate a party's own lack of performance, and there must be finality to litigation. See *J.E. Akers Co. v. Advertising Unlimited, Inc.*, 274 Kan. 359, 362, 49 P.3d 506 (2002) (noting that "while the law favors determinations of disputed claims on the merits of the claims, the law also recognizes the necessity of achieving finality in litigation").

Affirmed.